127 T.C. No. 11

UNITED STATES TAX COURT

ESTATE OF ELEANOR R. GERSON, DECEASED,
ALLAN D. KLEINMAN, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13534-04.              Filed October 24, 2006.

G created the Benjamin Gerson Trust which became
irrevocable when G died in 1973.  The trust provided
for the creation of a marital trust (the trust) for the
benefit of G's wife, D.  The trust conferred upon D a
general power of appointment over the trust property.
D died in October 2000 and left a will under which she
exercised the power of appointment in favor of her
grandchildren.  R determined that the transfer to D's
grandchildren was subject to generation-skipping
transfer (GST) tax.  P contends (1) sec. 26.2601-
1(b)(1)(i), GST Tax Regs., is invalid, and (2) the
transfer is excepted from GST tax under sec.
1433(b)(2)(A) of the Tax Reform Act of 1986, Pub. L.
99-514, 100 Stat. 2731.

Held:  Sec. 26.2601-1(b)(1)(i), GST Tax Regs., is
a reasonable and valid interpretation of sec.
1433(b)(2)(A) of the Tax Reform Act of 1986 because it
harmonizes with the plain language of the statute, its
origin, and its purpose.

    *Held*, *further*:  R's determination that the
disputed transfer is subject to GST tax is sustained.


Mark A. Phillips and Jeffry L. Weiler, for petitioner.

Stephen J. Neubeck, for respondent.


OPINION


HAINES, Judge:  Respondent issued a notice of deficiency to the Estate of Eleanor R. Gerson (the estate) determining a deficiency of $1,144,465 in Federal generation-skipping transfer (GST) tax.  The sole issue before the Court concerns the validity of section 26.2601-1(b)(1)(i), GST Tax Regs., which provides that the "grandfather" exception to the GST tax set forth in section 1433(b)(2)(A) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2085, 2731 (hereinafter TRA 1986 section 1433(b)(2)(A)), does not except from GST tax a transfer of property pursuant to the exercise, release, or lapse of a general power of appointment that is treated as a taxable transfer for purposes of Federal estate or gift tax.[1]  We hold the regulation is valid, and we sustain respondent's determination that the disputed transfer is subject to GST tax.

---

[1]  Unless otherwise indicated, section references are to sections of the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted to the Court fully stipulated pursuant to Rule 122. The parties' stipulation of facts, with attached exhibits, is incorporated herein by this reference.

Eleanor R. Gerson (decedent) died testate on October 20, 2000. At the time of her death, decedent was domiciled in Cleveland Heights, Ohio. Allan D. Kleinman was duly appointed executor of decedent's estate by the Probate Court for Cuyahoga City, Ohio. At the time the petition was filed, Mr. Kleinman was a resident of Cuyahoga County, Ohio, and in his capacity as executor had a mailing address of 200 Public Square, Suite 2300, Cleveland, Ohio 44114.

Decedent married Benjamin S. Gerson (Mr. Gerson) on November 6, 1938, and remained married to him until his death on July 22, 1973. Decedent and Mr. Gerson had four children and five grandchildren.

On December 9, 1968, Mr. Gerson, as grantor, executed a revocable trust agreement (the Benjamin Gerson Trust). On July 19, 1973, shortly before his death, Mr. Gerson amended the Benjamin Gerson Trust for the last time (the Third amendment). Upon Mr. Gerson's death on July 22, 1973, the Benjamin Gerson Trust, as amended, became irrevocable.

Article III, paragraph A of the Benjamin Gerson Trust, as amended, provided for the division of the trust corpus into three trusts. One of those trusts, Trust A, was a marital trust for

the benefit of decedent.  Article III, paragraph B of the Benjamin Gerson Trust, as amended, provided for the distribution of the income and principal of Trust A.  Specifically, paragraph B.3 of article III provided:

> Upon the death of my said wife, the balance remaining in Trust A, including any income therein received by the Trustee from the time of the last income payment and the date of death of my said wife, shall be distributed by the Trustee to such person or persons, and in such share or shares, in trust or otherwise, as my said wife shall, by her Last Will and Testament, or Codicil thereto, appoint by specific reference thereto.  It is my intention that my said wife shall have an unlimited testamentary power of appointment in respect of the whole of Trust A, including the power to appoint the same in favor of her own estate.

The parties agree that this provision of the Benjamin Gerson Trust, as amended, conferred upon decedent a general power of appointment, as that term is defined in section 2041(b).

The accounting records maintained by National City Bank as trustee of the Benjamin Gerson Trust reflect that no additions were made to the corpus of Trust A after September 25, 1985.

On September 24, 1999, decedent executed her will and, as grantor, a revocable trust agreement (the Eleanor Gerson Trust). On September 13, 2000, shortly before her death, decedent amended and restated the Eleanor Gerson Trust.

As of her death on October 20, 2000, decedent was survived by her four children and her five grandchildren.

Item I, paragraph C of the decedent's will provided:

> Under the terms of a certain Trust Agreement dated December 9, 1968, entered into between my spouse, BENJAMIN

S. GERSON, AND NATIONAL CITY BANK, Trustee (as modified by my spouse's Third amendment to said Trust Agreement, dated July 19, 1973), specifically at paragraph B.3 of Article III thereof, I am granted a general power to appoint at the time of my death the property held in Trust A of my said spouse's Trust Agreement.  I hereby exercise said power of appointment and direct that all property subject thereto shall be allocated to NATIONAL CITY BANK, Trustee, or any successor thereto, under my said 1999 Amended and Restated Revocable Trust Agreement, to be administered pursuant to the terms of ARTICLE III thereof (the Grandchildren's Trust) for the benefit of my grandchildren and more remote descendants.

ARTICLE III of the Eleanor Gerson Trust established the Grandchildren's Trust.  Under the terms of the Grandchildren's Trust, the corpus of the trust was divided into five equal shares for the benefit of each of her grandchildren.  Two of decedent's grandchildren received their shares outright.  The shares allocated to the other three grandchildren were held in trust for their respective benefit, to be transferred outright to such grandchild upon the earlier of the grandchild's reaching the age of 40 or the twenty-first anniversary of decedent's death less one day.

Decedent's estate filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on July 20, 2001, along with a Form 8275-R, Regulation Disclosure Statement, indicating it was taking a position contrary to section 26.2601-1(b)(1)(i), GST Tax Regs.  The corpus of Trust A as of the date of decedent's death is listed as Item 1 on Schedule H of the estate's return and is valued at $6,244,627.16.  The estate's

return reported a gross estate in the amount of $22,054,002.79, and Federal estate tax in the amount of $7,168,531.02.

As indicated, respondent issued a statutory notice of deficiency to decedent's estate. A timely petition for redetermination was filed with the Court challenging respondent's determination.

## Discussion

The parties do not dispute that a transfer from decedent directly to her grandchildren, skipping over decedent's children, normally would be subject to GST. As discussed in detail below, the dispute in this case centers on the transitional relief provided by the "grandfather" exception to the GST tax set forth in TRA 1986 section 1433(b)(2)(A), and the validity of section 26.2601-1(b)(1)(i), GST Tax Regs. The regulation provides that a transfer of property pursuant to the exercise, release, or lapse of a general power of appointment that is treated as a taxable transfer under Federal estate and/or gift tax provisions, is not a "transfer under a trust" that is eligible for transitional relief from GST tax under TRA 1986 section 1433(b)(2)(A).

To frame the issue properly, we briefly outline the GST tax provisions, review pertinent caselaw that preceded the promulgation of section 26.2601-1(b)(1)(i), GST Tax Regs., examine the regulation and the circumstances surrounding its promulgation, and summarize the parties' positions.

I.  The Generation-Skipping Transfer Tax

The current version of the GST tax, set forth in sections 2601-2664, was enacted under TRA 1986, in which Congress substantively modified and retroactively repealed an earlier GST tax regime enacted in 1976.[2]  The GST tax generally is imposed on transfers, whether outright or in trust, to transferees who are at least two generations below the generation of the transferor. Secs. 2611, 2613(a).  The public policy underlying the GST tax is to bring uniformity and consistency to Federal transfer taxes (estate, gift, and generation-skipping) by imposing a transfer tax upon all transfers whether directly to an immediate succeeding generation or to generations further removed from the transferor.  See Peterson Marital Trust v. Commissioner, 78 F.3d 795, 798 (2d Cir. 1996), affg. 102 T.C. 790 (1994); H. Rept. 99-426, at 824, 1986-3 C.B. (Vol. 2) 1, 824.

A generation-skipping transfer is defined to include a taxable distribution, a taxable termination, and a direct skip. Sec. 2611(a).  A direct skip means a transfer, subject to Federal estate or gift tax, of an interest in property to a skip person. Sec. 2612(c)(1).  A skip person means a natural person assigned to a generation which is two or more generations below the generation of the transferor, or a trust if all interests in such

---

[2]  The first generation-skipping transfer tax was enacted as part of the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2006, 90 Stat. 1879-1890.

trust are held by skip persons.  Secs. 2613(a)(1) and (2), 2651.

In the case of a direct skip (other than a direct skip from a trust), liability for GST tax falls on the transferor.  Sec. 2603(a)(3).  The term "transferor" means the decedent in the case of any property subject to Federal estate tax.  Sec. 2652(a)(1).  The flush language of section 2652(a)(1) provides that "An individual shall be treated as transferring any property with respect to which such individual is the transferor."

As a general rule, if a decedent holds a general power of appointment over property at death, the value of such property is included in the decedent's gross estate for Federal estate tax purposes under section 2041.  With exceptions not pertinent to our discussion, a general power of appointment means "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate".  Sec. 2041(b)(1).[3]

GST tax generally applies to any generation-skipping transfer made after October 22, 1986.  TRA 1986 sec. 1431(a).  However, TRA 1986 section 1433(b)(2)(A) provides special transitional rules or "grandfather" provisions excepting certain transfers from the reach of the GST tax.  TRA 1986 section 1433(b)(2)(A) provides:

---

[3]  It follows that a decedent who dies holding a general power of appointment over property is treated as the transferor of that property for purposes of GST tax.  See 5 Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 133.2.2 at 133-6 to 133-7 (2d ed. 1993).

(b) Special Rules.--

\* \* \* \* \*

(2) Exceptions.--The amendments made by this subtitle shall not apply to--

(A) any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985 (or out of income attributable to corpus so added),

September 25, 1985, apparently was selected as the effective date for irrevocable trusts because the House Committee on Ways and Means held a markup session on these matters on September 26, 1985. See Staff of the Joint Comm. on Taxation, 99th Cong., Tax Reform Proposals in Connection with Committee on Ways and Means Markup (JCS-44-85) (Sept. 26, 1985).

II. Caselaw

Before section 26.2601-1(b)(1)(i), GST Tax Regs. (discussed below) was promulgated, this Court and others opined on the applicability of the transitional or effective date provisions of TRA 1986 section 1433(b)(2)(A).

A. Peterson Marital Trust v. Commissioner

In Peterson Marital Trust v. Commissioner, 102 T.C. 790 (1994), affd. 78 F.3d 795 (2d Cir. 1996), we were asked to decide the validity of a regulation which provided that the lapse of a general power of appointment resulted in a "constructive" addition to the trust after the effective date of the GST tax. In that case, E. Norman Peterson died in 1974 and left a will providing for the creation of a marital trust under which his

wife (Mrs. Peterson) was entitled to receive all of the income and to withdraw one-half of the trust principal during her lifetime. Mrs. Peterson also was given a testamentary general power of appointment over the corpus of the marital trust. Under Mr. Peterson's will, if Mrs. Peterson did not exercise her power of appointment, the trust principal would be set aside in equal shares for Mr. Peterson's grandchildren.

Mrs. Peterson did not exercise her right to withdraw from the principal of the trust, and she did not exercise her general power of appointment over the trust corpus (except as to an amount necessary to pay estate tax attributable to the trust). As a result, at the time of Mrs. Peterson's death, most of the trust property passed to Mr. Peterson's grandchildren.

The Commissioner determined the transfers to Mr. Peterson's grandchildren were subject to GST tax. The Peterson Marital Trust (the taxpayer) challenged the Commissioner's determination and asserted the transfers qualified for transitional relief from GST under TRA 1986 section 1433(b)(2)(A). The taxpayer argued "Because the Marital Trust was irrevocable on September 25, 1985 * * * the subsequent transfers from that trust upon Mrs. Peterson's death are exempt from the GST tax." Peterson Marital Trust v. Commissioner, 102 T.C. at 796. The Commissioner maintained the taxpayer was not eligible for transitional relief under TRA 1986 section 1433(b)(2)(A) because the lapse of Mrs. Peterson's general power of appointment resulted in a

"constructive" addition of corpus to the trust after September 25, 1985, within the meaning of the statute.  The Commissioner relied upon section 26.2601-1(b)(1)(v)(A), Temporary GST Tax Regs., 53 Fed. Reg. 8445 (Mar. 15, 1988), amended by 53 Fed. 18839 (May 25, 1988).[4]  The taxpayer in turn asserted the temporary regulation was invalid on the ground it was contrary to the plain meaning of TRA 1986 section 1433(b)(2)(A).

Upon review of the matter, we initially observed TRA 1986 section 1433(b)(2)(A) did not define the term "added to the trust" and neither the provision nor its legislative history contained any specific guidance whether a lapse of a general power of appointment constituted a constructive addition to the corpus of a trust.  Peterson Marital Trust v. Commissioner, 102 T.C. 798-799.  Nevertheless, we gleaned from the effective date provisions a congressional intention to "grandfather" certain irrevocable trusts to protect the "reliance interests" of trust settlors who established trusts before the new GST tax regime was introduced.  Id. at 799.  We elaborated on this point as follows:

> The effective date rules of TRA 1986 section
> 1433(b)(2)(A) were apparently intended to "grandfather"

---

[4]  Sec. 26.2601-1(b)(1)(v)(A), Temporary GST Tax Regs., 53 Fed. Reg. 8445 (Mar. 15, 1988), provided in pertinent part:

> where any portion of a trust remains in the trust after the release, exercise, or lapse of a power of appointment over that portion of the trust, * * * the value of the entire portion of the trust subject to the power that was released, exercised, or lapsed will be treated as an addition to the trust.

trusts that were irrevocable prior to the date the House Ways and Means Committee began consideration of the bill containing the GST tax provisions. The most logical explanation for this grandfather clause is to protect the reliance interests of trust settlors who established irrevocable trusts prior to the legislative introduction of the GST tax regime eventually enacted by TRA 1986. See Tataranowicz v. Sullivan, 959 F.2d 268, 277 (D.C. Cir. 1992); Sercl v. United States, 684 F.2d 597, 599 (8th Cir. 1982).

As a corollary to its protection of reliance interests, the grandfather clause does not apply to transfers "made out of corpus added to the [grandfathered] trust after September 25, 1985". TRA 1986 sec. 1433(b)(2)(A). Unlike a person who has irrevocably transferred money to a trust prior to the grandfathering date, a person who effects a transfer of corpus to a grandfathered trust after that date is aware of (or should be aware of) the effects of the GST tax. Absent a restriction on post-grandfather-date transfers, an individual could utilize an existing grandfathered trust as a vehicle for passing additional amounts to skip persons free of GST tax, even though these additional amounts had not been irrevocably committed to such a transfer as of September 25, 1985. Such a result would be contrary to the reliance purpose underlying the grandfather clause. * * *

Section 26.2601-1(b)(1)(v)(A), Temporary GST Tax Regs., supra, is consistent with the reliance purpose underlying TRA 1986 section 1433(b)(2)(A), and is therefore valid. A person who holds a general power of appointment over trust property maintains control over the ultimate disposition of that property and is, in practical effect, in a position similar to the actual owner of the property. Estate of Kurz v. Commissioner, 101 T.C. 44, 50-51, 59-60 (1993), supplemented by T.C. Memo. 1994-221. This is the rationale underlying the inclusion of such property in the gross estate of the holder of the power for purposes of the Federal estate tax. Id.

Mrs. Peterson, as the holder of a testamentary general power of appointment, maintained effective control over the disposition of the property in the Marital Trust until her death in 1987. Had she chosen to do so, Mrs. Peterson could have exercised the general power of appointment to cause the trust

> property to be distributed to persons other than the Grandchildren's Trusts, thereby avoiding a generation-skipping transfer.  Accordingly, as of the September 25, 1985, grandfather date, the corpus of the trust was not irrevocably required to be distributed to the Grandchildren's Trusts.

Id. at 799-801 (emphasis added; fn. ref. omitted).  Consistent with the foregoing, we held the temporary regulation, which established that a lapse of a general power of appointment would result in a constructive addition to a trust, was a reasonable and valid interpretation of TRA 1986 section 1433(b)(2)(A), and the transfers to Mr. Peterson's grandchildren were subject to GST tax.

The taxpayer appealed this Court's decision to the Court of Appeals for the Second Circuit.  In affirming our decision, the Court of Appeals emphasized TRA 1986 section 1433(b)(2)(A) must be interpreted in proper context.  Peterson Marital Trust v. Commissioner, 78 F.3d at 796, 799.  The Court of Appeals observed the exercise, release, or lapse of a general power of appointment is viewed as "essentially identical to outright ownership" of the underlying property by the power holder for purposes of Federal estate and gift taxes.  Id. at 799-800.  Applying this "ownership" principle consistently in the context of the GST tax, the Court of Appeals held that a transfer of property as the result of the lapse of a general power of appointment should be treated as if the power holder received and then added property to the trust within the meaning of TRA 1986 section

1433(b)(2)(A).  Holding that the constructive addition principle embodied in section 26.2601-1(b)(1)(v)(A), Temporary GST Tax Regs., supra, was a reasonable construction of the statute, the Court of Appeals rejected the taxpayer's argument the word "added" in TRA 1986 section 1433(b)(2)(A) should be interpreted according to its ordinary, literal meaning (thus requiring an actual increase in the size of the trust as opposed to a constructive addition to the trust).  Peterson Marital Trust v. Commissioner, 78 F.3d at 800.

The Court of Appeals also rejected the taxpayer's argument the regulation in question was invalid because it did not comport with the purpose of the effective date provisions.  The taxpayer argued Mrs. Peterson allowed her power of appointment to lapse in an innocent effort to honor her husband's wishes and no elaborate legal maneuvers were employed in carrying out the transfers.  The Court of Appeals responded as follows:

> The [effective date] rule was not enacted to allow taxpayers who, in good faith and without intent to evade taxes, seek to continue benefitting from a tax advantage that Congress has eliminated.  It was designed, instead, to protect those taxpayers who, on the basis of pre-existing rules, made arrangements from which they could not reasonably escape and which, in retrospect had become singularly undesirable.[6]  By giving Mrs. Peterson a general power of appointment over the trust, Mr. Peterson created an arrangement which was desirable under then-existing tax laws and which could be reworked completely should the laws change, as they in fact did.  There is no reason to "grandfather" such a mutable arrangement, and Congress has given no indication that it wished to do so.

*  *  *  *  *

Mr. Peterson did not tie himself or his heirs up at all. He gave Mrs. Peterson a power over the trust that was great enough to undo any harm that stemmed from reliance on the absence of a GST at the time the trust was created. It is this fact that, in the end, not only gives additional support to the view that the Treasury Regulation on constructive additions is a reasonable one, but also negates all of the taxpayer's arguments that on "policy grounds" the exemption should apply in this case.

[6] This understanding of the purpose behind the effective date rule is underscored by the other provisions of the rule. First, the rule provided that the GST would not apply to transfers made by wills that had been executed before the date of enactment of the GST (October 22, 1986) if the decedent died before January 1, 1987. Pub. L. 99-514, §1433(b)(2)(B). This exception ensured that an individual who did not have a reasonable time between the enactment of the law and his death to alter his will would not be penalized by the new provision. Second, the effective date rule allowed an exception for any individual who was 'under a mental disability to change the disposition of his property and did not regain his competence to dispose of such property before the date of his death.' Pub. L. 99-514, §1433(b)(2)(C).

Id. at 801-802 (emphasis added).

B. <u>Simpson v. United States</u>

In <u>Simpson v. United States</u>, 183 F.3d 812 (8th Cir. 1999), revg. and remanding 17 F. Supp. 2d 972 (W.D. Mo. 1998), the Court of Appeals for the Eighth Circuit addressed a factual scenario nearly identical to the instant case and held a transfer to grandchildren pursuant to the exercise of a general power of appointment was eligible for transitional relief from GST tax under TRA 1986 section 1433(b)(2)(A).

The facts in <u>Simpson</u> are as follows. Mr. Simpson died in 1966 and left a will creating a testamentary trust primarily for

the benefit of his wife, Mrs. Bryan. The trust gave Mrs. Bryan a general power of appointment by will. Mrs. Bryan died in 1993 and left a will in which she exercised her power of appointment in favor of her grandchildren. The Commissioner determined the transfer to the grandchildren was subject to GST tax, and the District Court granted the Commissioner's motion for summary judgment, holding TRA 1986 section 1433(b)(2)(A) did not apply to relieve the taxpayer of liability.

On appeal, the Court of Appeals for the Eighth Circuit reversed, holding the transfer to the grandchildren constituted a "transfer under a trust which was irrevocable on September 25, 1985" within the plain meaning of the language of TRA 1986 section 1433(b)(2)(A). The Court of Appeals stated:

> Trust A, having been created by Mr. Simpson's will in 1966, was of course irrevocable on September 25, 1985. Was the transfer made by Mrs. Simpson a transfer 'under' this trust? We do not see how an affirmative answer can be avoided. The power of appointment that made the transfer possible was created by the trust. Language has to mean something, and the argument that this particular transfer was not 'under' trust A is simply untenable. [Simpson v. United States, supra at 814-815.]

 In so holding, the Court of Appeals rejected the Commissioner's argument that the relevant action for purposes of TRA 1986 section 1433(b)(2)(A) was Mrs. Bryan's exercise of her power of appointment (after October 22, 1986). In particular, the Court of Appeals concluded the relevant action under the express language of TRA 1986 section 1433(b)(2)(A) was whether the trust

became irrevocable on or before September 25, 1985.  The Court of Appeals reasoned as follows:

> The point is that when the trust was created and became irrevocable Mrs. Bryan was given the authority, under the law as it then existed, to exercise her general power of appointment in favor of anyone at all, and to do so without subjecting the transfer to a GST tax, such a tax then being far in the future.  This is the sort of reliance that the effective-date provision protects.  [Simpson v. United States, supra at 814-815.]

As a final matter, the Court of Appeals rejected the Commissioner's reliance on Peterson Marital Trust, distinguishing that case on the grounds (1) it concerned the lapse of a power of appointment (as opposed to the exercise of a power of appointment), and (2) the Commissioner had relied upon a temporary Treasury regulation in Peterson Marital Trust, whereas there was no regulation applicable to the transfer in dispute in the Simpson case.  Simpson v. United States, 183 F.3d at 815-816.

C.  Bachler v. United States

In Bachler v. United States, 281 F.3d 1078 (9th Cir. 2002), revg. and remanding 126 F. Supp. 2d 1279 (N.D. Cal. 2000), another case presenting a scenario nearly identical to the instant case, the Court of Appeals for the Ninth Circuit followed the holding of the Eighth Circuit in Simpson and held the disputed transfer to the Bachler grandchildren was eligible for relief from the GST tax under TRA 1986 section 1433(b)(2)(A). The disputed transfer in Bachler occurred in 1997, and, therefore, the Court of Appeals declined to address the validity

of section 26.2601-1(b)(1)(i), GST Tax Regs. (discussed below), which was not in effect until a later date.

III.  Section 26.2601-1(b)(1)(i), GST Tax Regs.

We now turn to the regulation at issue in this case--a regulation that was amended in response to the Eighth Circuit's decision in the Simpson case.  Section 26.2601-1(b)(1)(i), GST Tax Regs., originally was promulgated in 1995 and closely tracked the language of TRA 1986 section 1433(b)(2)(A).  The regulation stated in pertinent part:

> (b) Exceptions-(1) Irrevocable trusts-(i) In general.  The provisions of chapter 13 do not apply to any generation-skipping transfer under a trust (as defined in section 2652(b)) that was irrevocable on September 25, 1985.  The rule of the preceding sentence does not apply to a pro rata portion of any generation-skipping transfer under an irrevocable trust if additions are made to the trust after September 25, 1985. * * *

See T.D. 8644, 1996-1 C.B. 200, 207.

In November 1999, several months after the Eighth Circuit issued Simpson, the Secretary proposed to amend section 26.2601-1(b)(1)(i), GST Tax Regs.  See 64 Fed. Reg. 62997 (Nov. 18, 1999).  The Treasury Department's notice of proposed rulemaking included a discussion and comparison of Peterson Marital Trust and Simpson, and articulated the view that (1) there was no substantive difference in the cases, and (2) Simpson was wrongly decided.  See id. at 62999.  The proposed amendment was adopted and promulgated in final form on December 20, 2000.  See T.D. 8912, 2001-1 C.B. 452.

Section 26.2601-1(b)(1)(i), GST Tax Regs., now states in

pertinent part:

>    (b) Exceptions.  (1) Irrevocable trusts.  (i) In
> general.  The provisions of chapter 13 do not apply to
> any generation-skipping transfer under a trust (as
> defined in section 2652(b)) that was irrevocable on
> September 25, 1985.  * * *  Further, the rule in the
> first sentence of this paragraph (b)(1)(i) does not
> apply to a transfer of property pursuant to the
> exercise, release, or lapse of a general power of
> appointment that is treated as a taxable transfer under
> chapter 11 or chapter 12.  The transfer is made by the
> person holding the power at the time the exercise,
> release, or lapse of the power becomes effective, and
> is not considered a transfer under a trust that was
> irrevocable on September 25, 1985. * * *

In sum, section 26.2601-1(b)(1)(i), GST Tax Regs., recites the

general transitional rule set forth in TRA 1986 section

1433(b)(2)(A) and excepts from the rule a transfer of property

pursuant to the exercise, release, or lapse of a general power of

appointment if that transfer is treated as a taxable transfer by

the power holder for purposes of Federal estate or gift taxes.

Section 26.2601-1(c), GST Tax Regs., provides that the amended

portion of the regulation is applicable on and after November 18,

1999.[5]

IV.  The Parties' Positions

Petitioner relies on the Eighth and Ninth Circuit cases,

Simpson and Bachler, for the proposition that the plain and

unambiguous language of TRA 1986 section 1433(b)(2)(A) excepts

---

[5]  We note that decedent last amended and restated the
Eleanor Gerson Trust on Sept. 13, 2000, some 10 months after the
Secretary first proposed to amend the regulation in dispute.

the transfer in dispute from GST tax, inasmuch as decedent's exercise of her general power of appointment under the Benjamin Gerson Trust in favor of her grandchildren constituted a "generation-skipping transfer under a trust that was irrevocable on September 25, 1985". Petitioner maintains section 26.2601-1(b)(1)(i), GST Tax Regs., is an invalid attempt by the Secretary to "re-write the statute and to override the judicial construction of the statute's plain language".[6] As petitioner sees it, TRA 1986 section 1433(b)(2)(A) was intended to protect the reliance interest of a grantor of a trust that was irrevocable on September 25, 1985--that is, Congress intended such grantors could be assured any transfer from an irrevocable trust would not be subjected to GST tax.

Respondent maintains section 26.2601-1(b)(1)(i), GST Tax Regs., is a reasonable and valid interpretation of TRA 1986 section 1433(b)(2)(A). Respondent avers TRA 1986 section 1433(b)(2)(A) is silent regarding the proper treatment of transfers from irrevocable trusts pursuant to the exercise of a general power of appointment, and section 26.2601-1(b)(1)(i), GST Tax Regs., reasonably fills the statutory gap. Relying on the Second Circuit opinion in Peterson Marital Trust for the general

---

[6] In connection with this point, petitioner contends TRA 1986 sec. 1433(b)(2)(A) was carefully drafted to except from the GST tax any transfer under a trust that was irrevocable on Sept. 25, 1985, with one narrow exclusion for transfers made out of corpus added to the trust after Sept. 25, 1985.

proposition the transitional relief provided in section 1433(b)(2) was intended to protect taxpayers who "relying on pre-existing rules, made arrangements from which they could not reasonably escape", respondent asserts section 26.2601-1(b)(1)(i), GST Tax Regs., is a reasonable interpretation of TRA 1986 section 1433(b)(2)(A). In respondent's view, the regulation correctly focuses on whether a generation-skipping transfer was mandated under a trust that was irrevocable on September 25, 1985, not (as petitioner contends) on whether the trust was irrevocable on September 25, 1985. Respondent reasons that, because the disputed generation-skipping transfers in this case were not required or mandated under the trust, but were made at the decedent's election and pursuant to the exercise of a general power of appointment under which decedent was deemed to be the owner of the property for purposes of the Federal estate tax, the transfers are not eligible for exemption from the GST tax under TRA 1986 section 1433(b)(2)(A).

V. Analysis

This case presents a question of first impression concerning the validity of section 26.2601-1(b)(1)(i), GST Tax Regs. We evaluate the validity of the regulation against the plain language of TRA 1986 section 1433(b)(2)(A), its origin, and its purpose. Our analysis is informed in part by caselaw interpreting the statute. This case is appealable to the Court of Appeals for the Sixth Circuit, which to our knowledge has not

had occasion to address TRA 1986 section 1433(b)(2)(A) or regulations related thereto.

We note at the outset that the Secretary promulgated section 26.2601-1(b)(1)(i), GST Tax Regs., after the Commissioner received an adverse decision from the Eighth Circuit in Simpson. In Natl. Cable & Telecomm. Association v. Brand X Internet Servs., 545 U.S. 967, ___, 125 S. Ct. 2688, 2700 (2005), the Supreme Court stated:

> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.

As previously discussed, the Eighth Circuit based its holding in Simpson on the plain meaning of the phrase "transfer under a trust" contained in TRA 1986 section 1433(b)(2)(A), whereas this Court and the Second Circuit in Peterson Marital Trust held that the same statute must be read in proper context. Where, as here, the Secretary was confronted with what we consider conflicting judicial constructions of TRA 1986 section 1433(b)(2)(A), we do not believe the Supreme Court's statement in Natl. Cable & Telecomm. Association curtailed the Secretary's discretion to promulgate the regulation in dispute or mandates a holding in this case that Simpson trumps the regulation in dispute.

Section 26.2601-1(b)(1)(i), GST Tax Regs., is a Federal interpretative tax regulation promulgated under the general

authority vested in the Secretary by section 7805(a).  Although
entitled to considerable weight, interpretative tax regulations
are accorded less deference than legislative regulations issued
under a specific grant of authority.  See Chevron U.S.A., Inc. v.
Natural Res. Def. Council, Inc., 467 U.S. 837, 843-844 (1984);
United States v. Vogel Fertilizer Co., 455 U.S. 16, 24 (1982).
When this Court reviews an interpretative tax regulation, we
generally apply the analysis set forth by the Supreme Court in
Natl. Muffler Dealers Association v. United States, 440 U.S. 472
(1979).  Under Natl. Muffler Dealers Association, an
interpretative regulation is valid if it implements a
congressional mandate in a reasonable manner.  Id. at 476-477;
see United States v. Vogel Fertilizer Co., supra at 24 (quoting
United States v. Correll, 389 U.S. 299, 307 (1967)).  In Natl.
Muffler Dealers Association v. United States, supra at 477, the
Supreme Court stated:

> In determining whether a particular regulation
> carries out the congressional mandate in a proper
> manner, we look to see whether the regulation
> harmonizes with the plain language of the statute, its
> origin, and its purpose.  A regulation may have
> particular force if it is a substantially
> contemporaneous construction of the statute by those
> presumed to have been aware of congressional intent.
> If the regulation dates from a later period, the manner
> in which it evolved merits inquiry.  Other relevant
> considerations are the length of time the regulation
> has been in effect, the reliance placed on it, the
> consistency of the Commissioner's interpretation, and
> the degree of scrutiny Congress has devoted to the
> regulation during subsequent re-enactments of the
> statute.

In Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra, the Supreme Court enunciated the following two-part analysis applicable to judicial review of an agency's construction of a statute:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. [Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra at 842-843; fn. refs. and citations omitted.]

In the case before us, we conclude it is unnecessary to attempt to discern any substantive difference between Natl. Muffler Dealers Association and Chevron U.S.A., Inc. because we conclude the result here would be the same under either standard. See Swallows Holding, Ltd. v. Commissioner, 126 T.C. 96, 131 (2006).

In evaluating the validity of section 26.2601-1(b)(1)(i), GST Tax Regs., we first consider whether Congress has directly spoken to the precise question at issue. Inasmuch as TRA 1986 section 1433(b)(2)(A) does not define the phrase "transfer under a trust", we do not believe that Congress has directly spoken to

the precise question at issue here; i.e., the proper treatment under the GST tax effective-date provisions of transfers effected pursuant to the exercise, release, or lapse of a general power of appointment.  As previously discussed, the Eighth and Ninth Circuits in Simpson and Bachler, respectively, have held the plain language of TRA 1986 section 1433(b)(2)(A) excepts from GST tax a generation-skipping transfer effected pursuant to the exercise of a general power of appointment under a trust that was irrevocable on September 25, 1985.  We respectfully disagree with the holdings in these two cases.  Instead, we adhere to the view, articulated by the Second Circuit in Peterson Marital Trust, that the words of TRA 1986 section 1433(b)(2)(A) "can only be given meaning in a particular context".  Peterson Marital Trust v. Commissioner, 78 F.3d at 799.[7]  Consistent with Natl. Muffler Dealers Association and Chevron U.S.A., Inc., we do not evaluate the validity of section 26.2601-1(b)(1)(i), GST Tax Regs., by examining the plain language of TRA 1986 section 1433(b)(2)(A) in a vacuum--we also are obliged to consider the origin and purpose of the statute.

Our review of the legislative history of TRA 1986 as it pertains to the question presented reveals two matters that warrant discussion.  First, as we comprehend statements by the Committee on Ways and Means (the Committee) in H. Rept. 99-426,

---

[7]  Cf. Greenpeace, Inc. v. Waste Techs. Indus., 9 F.3d 1174, 1179-1181 (6th Cir. 1993).

at 820, 1986-3 C.B. (Vol. 2) at 820, describing then-present law, under the heading "Overview", the Committee understood the GST tax was imposed on a transfer from a trust which specifically provided for distributions to a generation at least two generations removed from the grantor. This viewpoint is reiterated in H. Rept. 99-426, at 821, 1986-3 C.B. (Vol. 2) at 821, under the heading "Generation assignment", which states in pertinent part: "A generation-skipping trust is a trust having two or more generations of 'beneficiaries' who belong to generations which are 'younger' than the generation of the grantor of the trust." Significantly, nothing in the committee reports suggests that, when Congress referred to "transfers under a trust", it ever contemplated or considered a volitional generation-skipping transfer arising from the exercise of a general power of appointment as opposed to a specific transfer by the settlor to identified persons.

Second, in H. Rept. 99-426, supra at 824, 1986-3 C.B. (Vol. 2) at 824, the Committee stated, under the heading "Reasons for Change":

> The committee believes, as it stated when the generation-skipping transfer tax originally was enacted in 1976, that the purpose of the three transfer taxes (gift, estate, and generation-skipping) is not only to raise revenue, but also to do so in a manner that has as nearly as possible a uniform effect. This policy is best served when transfer tax consequences do not vary widely depending on whether property is transferred outright to immediately succeeding generations or is transferred in ways that skip generations. * * * The bill accomplishes the committee's goal of simplified

> administration while ensuring that <u>transfers having a
> similar substantial effect will be subject to tax in a
> similar manner</u>.  [Emphasis added.]

To paraphrase, the Committee expressed its intention that (1) Federal transfer taxes generally should be applied as uniformly as possible, and (2) generation-skipping transfers having a similar substantial effect should be taxed in a similar manner.

In <u>Peterson Marital Trust v. Commissioner</u>, 98 F.3d at 800, the Second Circuit concluded the regulation in dispute therein was a reasonable interpretation of TRA 1986 section 1433(b)(2)(A) because the regulation ensured that general powers of appointment would be treated consistently; i.e., treated as outright ownership of the property for purposes of all Federal transfer taxes, which harmonized with the origin and purpose of the statute.

Section 26.2601-1(b)(1)(i), GST Tax Regs., harmonizes with the origin and purpose of TRA 1986 section 1433(b)(2)(A) and achieves the consistency and uniformity Congress sought.  By excluding transfers arising from the exercise of a general power of appointment from the transitional relief provided in TRA 1986 section 1433(b)(2)(A) for "transfers under a trust", the regulation ensures that general powers of appointment are uniformly treated as the equivalent of outright ownership by the power holder.  In other words, the regulation is consistent with the general proposition under the GST tax regime that a decedent who dies holding a general power of appointment over property is

treated as the "transferor" of that property for purposes of GST tax. Secs. 2603(a)(3), 2652(a)(1); 5 Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 133.2.2 at 133-6 to 133-7 (2d ed. 1993). The regulation also promotes uniformity by ensuring that generation-skipping transfers arising from the lapse of a power of appointment on the one hand, and generation-skipping transfers arising from the exercise of a power of appointment on the other, are taxed in a similar manner.[8]

We also must not lose sight of the particular purpose of the statute. As the Second Circuit discussed in Peterson Marital Trust v. Commissioner, 78 F.3d at 801-802 n.6, the transitional rules set forth in section 1433(b)(2) are so-called grandfather provisions designed to protect taxpayers who, on the basis of pre-existing rules, made estate-planning arrangements from which they could not reasonably escape and which would otherwise generate GST tax liability. The generation-skipping transfers in the present case are not transfers the transitional rules were

---

[8] In Simpson v. United States, 183 F.3d 812, 815-816 (8th Cir. 1999), the Court of Appeals for the Eighth Circuit distinguished Peterson Marital Trust v. Commissioner, 78 F.3d 795 (2d Cir. 1996), in part because the latter case concerned a lapse of a power of appointment, which was treated as resulting in a constructive addition to the trust. Considering that the holder of general power of appointment is treated as having the same outright "ownership" interest for purposes of Federal transfer taxes, see secs. 2041 (estate tax), 2514(b) (gift tax), we fail to see any meaningful difference for present purposes whether in the end there is a lapse, exercise, or release of the power. See Harrington et al., Generation Skipping Transfer Tax, par. 7.03[5][b][i] (2d ed. 2001) (questioning the Eighth Circuit's attempt at distinguishing Peterson Marital Trust).

intended to protect. Mr. Gerson did not structure his irrevocable trust in a manner that tied the hands of his heirs, nor was decedent required to make the disputed generation-skipping transfers. To the contrary, Mr. Gerson gave the decedent the flexibility to transfer trust property to anyone of her choosing. Decedent, who was aware or should have been aware of the regulation in dispute, nevertheless exercised her general power of appointment to effect a generation-skipping transfer.

Considering all the factors discussed above, we hold section 26.2601-1(b)(1)(i), GST Tax Regs., is a reasonable and valid interpretation of the plain language of TRA 1986 section 1433(b)(2)(A). The regulation harmonizes with the plain language of the statute, its origin, and its purpose. Natl. Muffler Dealers Association v. United States, 440 U.S. at 477. Accordingly, we sustain respondent's determination that decedent's transfer to her grandchildren was subject to GST tax.

To reflect the foregoing,

Decision will be

entered for respondent.

Reviewed by the Court.

COHEN, SWIFT, HALPERN, THORNTON, GOEKE, and KROUPA, JJ., agree with this majority opinion.

CHIECHI, J., concurs in result only.

FOLEY, J., did not participate in the consideration of this opinion.

SWIFT, <u>J.</u>, concurring:  The majority opinion is too circumspect in discussing the erroneous interpretations of section 1433(b)(2)(A) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2731, by the Courts of Appeals in <u>Simpson v. United States</u>, 183 F.3d 812 (8th Cir. 1999), and in <u>Bachler v. United States</u>, 281 F.3d 1078 (9th Cir. 2002).

In the above opinions, the Courts of Appeals for the Eighth and Ninth Circuits make at least two serious mistakes:  (1) They merge and confuse the relevant transfers that are to be considered under the grandfather exception of section 1433(b)(2)(A); and (2) they improperly distinguish and limit <u>Peterson Marital Trust v. Commissioner</u>, 78 F.3d 795 (2d Cir. 1996), affg. 102 T.C. 790 (1994).

(1) <u>The Relevant Transfers</u>

The Court of Appeals for the Eighth Circuit in <u>Simpson v. United States</u>, <u>supra</u> at 813, begins its analysis by correctly stating that --

> the general rule [of section 1433] * * * would apply
> [the GST tax] to any transfer taking place after the
> enactment of the statute * * * .

In the very next paragraph of its opinion, however, the Court of Appeals merges the transfer that took place in that case after September 25, 1985, with the earlier transfer that took place therein in 1966 when the trust was created and the corpus was transferred to the trust.  The opinion states --

The power of appointment that made the [post-September 25, 1985] transfer possible was created by the trust. Language has to mean something, and the argument that [the post-September 25,1985, transfer] * * * was not "under" [the trust] * * * is simply untenable. [Id. at 814.]

Certainly, in Simpson the creation of the trust in 1966 made "possible" the later, actual transfer that occurred in 1993. But the "possibility" in 1966 of a later transfer and the "fact" of the transfer in 1993 are two different things. In their analyses, the Courts of Appeals for the Eighth and Ninth Circuits seem erroneously to merge the creation of the possibility of a transfer to grandchildren (via a transfer to a surviving spouse of a general power of appointment) with the fact of a later, actual transfer to grandchildren, as if they constituted the same transfer.

In both Simpson and in Bachler the surviving spouse's testamentary exercise of a general power of appointment, and thereby the post-September 25, 1985, skip transfers to grandchildren, were "made possible under" the trusts, but the skip transfers did not "occur under" the trusts. They occurred under the general power of appointment given to the surviving spouse by the trust creator, the predeceased husband. Under that general power of appointment, the surviving spouse need not have made skip transfers and could have transferred the property to anyone she wished.

The only relevant transfer of property that occurred "under" the trust was effectively made to the surviving spouse upon creation of the trust and the grant to her of a general power of appointment. Thereafter, the surviving spouse made a separate, independent, discretionary, and subsequent skip transfer of property to grandchildren, which transfer was made and occurred under the general power of appointment, not under the trust.

Under a proper understanding of TRA 1986 section 1433(b)(2)(A) of the general power of appointment transferred to Mrs. Gerson, and of the property transfer that occurred when Mrs. Gerson exercised her general power of appointment, the result reached by the majority herein is correct and should be reached even if the regulations at issue had never been promulgated.

(2) The Second Circuit's Opinion in Peterson Marital Trust

In Peterson Marital Trust v. Commissioner, supra, the Court of Appeals for the Second Circuit held that the mere lapse of a general power of appointment held by a surviving spouse and the resulting transfer of property to a skip generation triggered a post-September 25, 1985, taxable generation-skipping transfer. If the mere lapse of a general power of appointment triggers a taxable generation-skipping transfer of property, certainly it should follow that the affirmative exercise of a general power of

appointment in favor of a skip generation triggers a taxable generation-skipping transfer of property.

Rather than distinguishable, as the Courts of Appeals for the Eighth and Ninth Circuits concluded, see Simpson v. United States, 183 F.3d at 815; Bachler v. United States, 281 F.3d at 1080, the post-September 25, 1985, exercise of general powers of appointment that were involved in Simpson and in Bachler are more egregious, or rather, are more obvious post-September 25, 1985, independent and discretionary transfers of property subject to the GST tax than was the deemed transfer involved in Peterson Marital Trust v. Commissioner, 78 F.3d 795 (2d Cir. 1996). Accordingly, the transfer that occurred in this case (and in Simpson and in Bachler) would appear to be a clearer case for application of the GST tax than the transfer in Peterson Marital Trust, since the surviving spouse herein affirmatively made a generation-skipping transfer, while the spouse in Peterson Marital Trust did so only by default. See Harrington & Acker, Estates, Gifts, and Trusts: Generation Skipping Tax, 850 Tax Mgmt. (BNA), A-73 (2002).

The interpretations of TRA 1986 section 1433(b)(2)(A) that are reflected in the Peterson Marital Trust opinions of this Court and of the U.S. Court of Appeals for the Second Circuit, that are reflected in the various versions of Treasury regulations that have been promulgated over the years, and also

the interpretation reflected in the majority opinion herein, are consistent and uniform.  Under those interpretations, post-September 25, 1985, exercises of general powers of appointment in favor of skip donees do not qualify for the TRA 1986 section 1433(b)(2)(A) grandfather provision, and they trigger the GST tax.

Peterson Marital Trust is not distinguishable and supports the majority's opinion herein.

Respectfully, in the above two respects the United States Courts of Appeals for the Eighth and the Ninth Circuits in Simpson and in Bachler erred in their analyses of TRA 1986 section 1433(b)(2)(A).

A few concluding comments are appropriate.  It has been recently suggested that the Secretary and respondent are misusing their administrative regulatory authority to "bootstrap" (Judge Laro's dissent, infra p. 50 note 1) or overcome a "failed litigating position" (Swallows Holding v. Commissioner, 126 T.C. 96, 148 (2006)).  In my opinion, these suggestions are inappropriate and incorrect.

Under section 7805(a), Congress has given the Secretary and respondent important authority and responsibility to assist in the administration of our Federal income tax laws through the promulgation of regulations.  The suggestion that the Secretary and respondent are somehow misusing this authority and responsibility undermines their important role in this regard.

Also, the suggestion calling into question the Secretary's and respondent's motive in promulgating the particular regulation involved herein is inaccurate, as was the similar suggestion in Swallows Holding v. Commissioner, supra at 136, 138, 147-148. Section 26.2601-1(b)(1)(i), GST Tax Regs., was promulgated in 2000, T.D. 8912, 2001-1 C.B. 452, after respondent's interpretation of the statutory transition rule of section 1433(b)(2)(A) had been accepted by the Court of Appeals for the Second Circuit in Peterson Marital Trust v. Commissioner, 78 F.3d 795 (1996), by two District Courts in Bachler v. United States, 126 F. Supp. 2d 1279 (N.D. Cal. 2000), and Simpson v. United States, 17 F. Supp. 2d 972 (W.D. Mo. 1998), and by this Court in Peterson Marital Trust v. Commissioner, 102 T.C. 790 (1994).

By December of 2000, when the regulation at issue herein was promulgated, respondent's interpretation of the statutory transition rule of TRA 1986 section 1433(b)(2)(A) had been rejected by the Court of Appeals for the Eighth Circuit in Simpson v. United States, 183 F.3d 812 (8th Cir. 1999).  However, in light of the above four Federal court opinions that had adopted respondent's statutory interpretation, it is an overstatement and simply not correct to suggest that the Secretary's regulation bootstrapped a failed litigating position.

With the responsibility for tax administration and with the authority and responsibility under section 7805(a) to provide

rules and regulations relating to our Federal tax laws, what are the Secretary and respondent supposed to do?  When the Federal courts disagree as to the proper interpretation of tax law, is the regulatory authority placed on hold?  Must the public and the tax administrator await an ultimate resolution of the issue by the courts?  What if the Federal courts remain in conflict, without an ultimate resolution of an issue?  Is the tax law, in such a situation, to be interpreted differently in different judicial districts?  Are taxpayers to be treated differently?[1]

The Supreme Court recently addressed these concerns in <u>Natl. Cable & Telecomm. Association v. Brand X Internet Servs.</u>, 545 U.S. 967, 125 S. Ct. 2688 (2005).  Therein, the Supreme Court made it clear that the regulatory authority of Federal agencies remains viable and in play even in the face of pending litigation and decided court cases.  The Supreme Court explained:

> Yet allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute * * * would allow a court's interpretation to override an agency's. <u>Chevron</u>'s premise is that it is for agencies, not courts, to fill statutory gaps.  * * *  Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.
>
> *     *     *     *     *     *     *

---

[1]  Court conflicts over the proper interpretation of statutory language provide perhaps the best evidence that the statutory language subject to the conflicting interpretations is ambiguous.

Yet whether Congress has delegated to an agency the authority to interpret a statute does not depend on the order in which the judicial and administrative constructions occur.  The Court of Appeals' rule [holding that stare decisis required a court to apply a judicial construction rather than a previously existing agency construction], moreover, would "lead to the ossification of large portions of our statutory law," by precluding agencies from revising unwise judicial constructions of ambiguous statutes.  Neither <u>Chevron</u> nor the doctrine of stare decisis requires these haphazard results.  [<u>Id.</u> at ___, 125 S. Ct. at 2701-2702; citation omitted.]

For the reasons stated, I respectfully concur.

WELLS and HOLMES, <u>JJ</u>., agree with this concurring opinion.

THORNTON, J., concurring:  Under the subject transitional rule, a generation-skipping transfer escapes the effects of the 1986 amendments to the generation-skipping transfer (GST) tax if it is a "generation-skipping transfer under a trust which was irrevocable on September 25, 1985".  See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1433(b)(2)(A), 100 Stat. 2731.  This language has been interpreted as referring:  (1) Narrowly to a generation-skipping transfer that is pursuant to the terms of the trust agreement; and (2) more broadly, to any generation-skipping transfer that is made possible under the terms of the trust agreement, for instance, through the exercise of a general power of appointment pursuant to the trust agreement.  The disputed regulations and the majority opinion endorse the first reading. Two Courts of Appeals have endorsed the second reading.  Bachler v. United States, 281 F.3d 1078 (9th Cir. 2002); Simpson v. United States, 183 F.3d 812 (8th Cir. 1999).  For the reasons discussed below, I believe the disputed regulations and the majority report are correct.

The "cardinal rule" of statutory construction requires us "to give effect, if possible, to every clause and word of a statute."  United States v. Menasche, 348 U.S. 528, 538-539 (1955) (internal quotations omitted).  In parsing the transitional rule, Bachler and Simpson went astray by failing to give effect to the modifying language "generation-skipping" that

immediately precedes "transfer under a trust".  In <u>Simpson</u>, for instance, the appeals court reasoned that because the exercise of a general power of appointment was made possible by the trust, and the transfer was "under" the trust, the generation-skipping transfer effected by the power's exercise qualified under the transitional rule.  <u>Simpson v. United States</u>, <u>supra</u> at 814; accord <u>Bachler v. United States</u>, <u>supra</u>.  Under this construction, however, the modifying language "generation-skipping" has no significant effect.  Inasmuch as neither the GST tax nor the transitional rule has any application to any type of transfer other than a generation-skipping transfer, the modifying language "generation-skipping" is unnecessary and superfluous if it serves merely to label the type of transfer eligible for transitional relief.  Yet, under the reading adopted by <u>Simpson</u> and <u>Bachler</u>, the language appears to serve no other function.

To have significant purpose and effect, the modifying language "generation-skipping" is properly construed, I believe, as limiting transitional relief to a generation-skipping transfer that is pursuant to the terms of the trust agreement; i.e., to a transfer that is, just as the statute says, "a generation-skipping transfer under a trust".  A generation-skipping transfer that results from the power holder's exercise of a general power of appointment under a trust agreement is not a "generation-skipping transfer under a trust" within the meaning of the

transitional rule.  Because this conclusion, based partly on the arcana of the GST tax, may not be immediately obvious, some background is in order.

The GST tax applies to three forms of transfers (direct skips, taxable terminations, and taxable distributions) for the benefit of a "skip person", defined generally as a person at least two generations younger than the "transferor".  Secs. 2611(a), 2613.  See generally Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 133.2.1, at s133-2 (Supp. 2006).  For purposes of the GST tax, the "transferor" is the individual "with respect to whom property was most recently subject to Federal estate or gift tax."  Sec. 26.2652-1(a)(1), GST Tax Regs.  Pursuant to section 2652(a)(1), "An individual shall be treated as transferring any property with respect to which such individual is the transferor."  Thus, a generation-skipping transfer that is effected through a trust arrangement does not necessarily occur upon the creation of the trust.  Rather, the generation-skipping transfer occurs when the property passing to the skip person becomes subject to Federal estate or gift tax with respect to the transferor.

In the case of property subject to the Federal estate tax, the "transferor" is the decedent.  Sec. 2652(a)(1). Regardless of who the initial "transferor" of property might have been, if the property is subsequently included in the gross estate of

another person, that person is substituted for the "transferor".

See Bittker & Lokken, supra par. 133.2.2. Under section 2041, if

a decedent holds a general power of appointment, the property

subject to the power is included in the decedent's gross estate.

Consequently, for GST tax purposes the holder of such a power is

the transferor of the property.[1] See Peterson Marital Trust v.

Commissioner, 102 T.C. 790, 794, 805 (1994), affd. 78 F.3d 795

(2d Cir. 1996).

In the instant case, the appointive property under Mrs.

Gerson's general power of appointment was includable in her gross

estate pursuant to section 2041. Consequently, for GST tax

purposes, she was the "transferor" of this property. Under

section 2652(a), she (and not the grantor of the trust, Mr.

Gerson) is treated as transferring this property.[2] Thus,

notwithstanding that Mrs. Gerson's power of appointment arose

---

[1] By contrast, if a decedent holds a nongeneral power of appointment (i.e., a limited or special power of appointment), the appointive property is not taxable under sec. 2041. See Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 128.1, at 128-5 (2d ed. 1993). Consequently, in the case of property passing pursuant to a nongeneral power of appointment, the power holder would not be the "transferor" for purposes of the GST tax.

[2] Consistent with this view, there appears to be no dispute that the relevant generation-skipping transfer is the "direct skip" from Mrs. Gerson to her grandchildren, rather than any "taxable distribution" from the trust. As the majority opinion states, majority op. p. 6, "The parties do not dispute that a transfer from decedent [Mrs. Gerson] directly to her grandchildren, skipping over decedent's children, normally would be subject to GST."

under the trust or might be said to have been exercised "under" the trust, the resulting generation-skipping transfer is treated as being directly from her to her grandchildren.  Consequently, it was not a "generation-skipping transfer under a trust" within the meaning of the transitional rule.

Sound policy considerations support this result.  For Federal estate tax purposes, a general power of appointment is tantamount to outright ownership of the property to which the power relates.  See Morgan v. Commissioner, 309 U.S. 78, 81 (1940); Estate of Kurz v. Commissioner, 101 T.C. 44, 50-51 (1993).[3]  Because the holder of a general power of appointment has "effective control over the disposition of the property", the power holder has the ability to avoid a generation-skipping transfer.  Peterson Marital Trust v. Commissioner, supra at 800.  Consequently, the power holder has no legitimate expectation of immunity from the 1986 GST tax amendments that might otherwise apply to generation-skipping transfers resulting from exercise of the power.  The purpose of the transitional rule would not be served by providing transitional relief in these circumstances.

---

[3] In this regard, the Federal estate tax rules depart from the traditional common law view, under which the donee was often likened to an agent or trustee for the donor.  Under the common-law "relation-back theory", the appointive property was generally thought of as passing directly from the donor to the appointee or the takers in default.  See Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 128.1, at 128-3 (2d ed. 1993).

The disputed regulations are consistent with <u>Peterson Marital Trust v. Commissioner</u>, <u>supra</u>, and provide like results for generation-skipping transfers arising from the exercise of general powers of appointment and generation-skipping transfers arising from lapses of general powers of appointment.  This result properly recognizes that there is no substantive difference between these types of generation-skipping transfers.

As memorialized by the Staff of the Joint Committee on Taxation in the General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987) (the General Explanation), contemporaneous Congressional colloquies indicate that the principal architects of the transitional rule understood it to apply to the exercise of a <u>limited</u> power of appointment under an otherwise grandfathered trust, provided that the exercise of the limited power did not unduly extend the time for the vesting of any beneficial interest in the trust.[4]  From these statements, one may

---

[4] The General Explanation states:

> The new generation-skipping transfer tax does not apply to the exercise of a limited power of appointment under an otherwise grandfathered trust or to trusts to which the trust property is appointed provided such exercise cannot postpone vesting of any estate or interest in the trust property for a period ascertainable without regard to the date of the creation of the trust. [Staff of Jt. Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 1267 n.12 (J. Comm. Print 1987).]

As authority for this statement, the General Explanation cites substantively identical colloquies involving the Chairman
(continued...)

draw two negative inferences: First, that the transitional rule was not meant to apply to a limited power of appointment that ran afoul of the vesting requirements; and second, and of more relevance here, that the transitional rule was not meant to apply to the exercise of a general power of appointment under an otherwise grandfathered trust.

In short, giving effect to all its terms and considering its origin and purpose, the transitional rule has a meaning sufficiently plain as to erase any doubt as to the validity of the disputed regulations.[5] Insofar as the statute might be thought to be ambiguous, to that extent it might be said to have

---

[4](...continued)
and Ranking Member of the Senate Committee on Finance and the Chairman of the House Committee on Ways and Means. See 132 Cong. Rec. S13952 (daily ed. Sept. 26, 1986) (colloquy between Senate Committee on Finance Chairman Packwood and the ranking Member Sen. Bentsen); 132 Cong. Rec. H8362 (daily ed. Sept. 25, 1986) (colloquy between House Committee on Ways and Means Chairman Rostenkowski and House Committee on Ways and Means Member Rep. Andrews).

[5] I agree with the conclusion, see majority op. p. 22, that the Supreme Court's statement in Natl. Cable & Telecomm. Association v. Brand X Internet Servs., 545 U.S. 967 (2005), regarding the circumstances in which a "prior judicial construction" might trump an "agency construction otherwise entitled to Chevron deference", does not compel us to hold that the disputed regulations are invalid in the wake of Simpson v. United States, 183 F.3d 812 (8th Cir. 1999), or Bachler v. United States, 281 F.3d 1078 (2002). Under the rule of Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), this Court is not required to follow Simpson and Bachler in this case, which is not appealable to either of the circuits in which those cases arose. In any event, Simpson and Bachler did not address the validity of the disputed regulations.

left room for the Secretary to exercise his discretion in promulgating the disputed regulations, which for the reasons discussed above are based on a "permissible construction of the statute".  <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837, 843 (1984).

COHEN, SWIFT, WELLS, MARVEL, GOEKE, KROUPA, and HOLMES, <u>JJ</u>., agree with this concurring opinion.

HOLMES, J., concurring:  The issue before the court is simply this--is the regulation a reasonable interpretation of the statute?  I concur with the result that the majority reaches and with their analysis of the disputed regulation's validity under National Muffler.[1]

I write separately because the Sixth Circuit--the circuit to which any appeal of this case is headed--has expressly adopted Chevron[2] deference for tax regulations, like the one here, that are issued under section 7805's general authority.[3]  In Swallows,[4] the Court aired its differences on deference under National Muffler versus deference under Chevron.  Swallows is now on appeal, but I recognize that the majority is constrained to use National Muffler review unless there would be a practical certainty of reversal.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  That practical certainty isn't present here because, as is usually the case, whether a regulation is valid doesn't depend on the standard:

---

[1]  Natl. Muffler Dealers Assn. v. United States, 440 U.S. 472 (1979).

[2]  Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

[3]  See Hosp. Corp. of Am. & Subs. v. Commissioner, 107 T.C. 73 (1996), affd. 348 F.3d 136, 140-141 (6th Cir. 2003); Peoples Fed. Sav. & Loan Assn. v. Commissioner, T.C. Memo. 1990-129, revd. 948 F.2d 289, 299-300 (6th Cir. 1991).

[4]  Swallows Holding, Ltd. v. Commissioner, 126 T.C. 96, on appeal (3d Cir., filed July 5, 2006).

the top-to-bottom review we have found required by <u>National Muffler</u> and the two-part test of <u>Chevron</u> will usually lead to the same result.[5]

Under both these standards, we start by deciding whether the words of section 1433(b)(2)(A) have a plain meaning. As the Supreme Court described step one of the analysis in <u>Chevron</u>, "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842-43. As I noted in <u>Swallows</u>, 126 T.C. at 164 n.7 (Holmes, J., dissenting), there is a controversy over whether courts should only look to the text and structure of the statute in deciding whether a statute is ambiguous, <u>Natl. R.R. Passenger Corp. v. Boston & Me. Corp.</u>, 503 U.S. 407, 417 (1992) (citations omitted), or whether they should also investigate the legislative history in this first step, <u>Chevron</u>, 467 U.S. at 842-843.[6] However, that controversy isn't relevant to this case: The majority opinion and the carefully drawn concurrences of Judges Swift and Thornton show the ambiguity of the phrase "generation-skipping transfer under a trust," and Judge Thornton's shows as

---

[5] See <u>Swallows</u>, 126 T.C. at 173-174 (Holmes, J., dissenting).

[6] The Sixth Circuit <u>does</u> look at legislative history in step one. See <u>Hospital Corp.</u>, 348 F.3d at 143; <u>Peoples Federal S&L</u>, 948 F.2d at 299.

well that the legislative history--such as it is--reveals that the overall purpose of the transition provision was to ratify only unavoidable generation-skipping transfers.

There is not, then, an "unambiguously expressed intent" to the contrary. I readily admit that the dissent's construction, following <u>Bachler</u> and <u>Simpson</u>, is reasonable too. But, as the Sixth Circuit noted in <u>Peoples Federal S&L</u>, "there may be several permissible constructions. If there are gaps left by silence or ambiguity of the statutes in question, agencies may fill the gaps with necessary rules, providing they are reasonable, and courts should not interfere with this process." 948 F.2d at 300.

And reasonableness is all that's required in step two of <u>Chevron</u>. In gift and estate tax law, the IRS has for years consistently treated a general power of appointment as equivalent to ownership. See <u>Estate of Kurz v. Commissioner</u>, 101 T.C. 44 (1993), supplemented and reconsideration denied T.C. Memo. 1994-221, affd. 68 F.3d 1027 (7th Cir. 1995). Because the holder of a general power controls the ultimate disposition of trust property, that property is includable in the gross estate for estate tax purposes, section 2041, and the transfer of property by the exercise or release of the power is deemed a transfer by the person in possession of the power, section 2514(b). In

Peterson,[7] moreover, the Second Circuit agreed with us (even in the absence of the regulation at issue today) that it was reasonable to regard the lapse of a general power as a constructive addition to the trust that created it.  It is just as reasonable to treat all generation-skipping uses--whether a lapse or transfer or some other exercise--of a general power alike.  Doing so eliminates the distinctions created in Simpson and Bachler between the taxability of a general power's exercise, and the taxability of its lapse.  It also conforms the transition provision to a commonsense reading of section 1433(b)(2)(A) as protecting generation-skipping transfers only where the tax could not have otherwise been avoided.

Is section 26.2601-1(b)(1)(i), GST Tax Regs., the best interpretation of the statute?  That isn't for us to decide.  Our task is simply to determine if the regulation is a reasonable interpretation of the exemption's applicability to the holder of a general power under an irrevocable generation-skipping trust. This regulation is.

SWIFT, J., agrees with this concurring opinion.

---

[7] Peterson Marital Trust v. Commissioner, 102 T.C. 790 (1994), affd. 78 F.3d 795 (2d Cir. 1996).

LARO, J., dissenting:  The Court's opinion concludes supra p. 29 that respondent's interpretation of section 1433(b)(2)(A) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2731, "is a reasonable and valid interpretation of the plain language of TRA 1986 section 1433(b)(2)(A)".  Because I disagree, I dissent.[1]  As the Courts of Appeals for the Eighth and Ninth Circuits held in Simpson v. United States, 183 F.3d 812 (8th Cir. 1999), and Bachler v. United States, 281 F.3d 1078 (9th Cir. 2002), factual settings that the Court's opinion supra pp. 15 and 17 acknowledges are "nearly identical" to the factual setting at hand, the plain reading of TRA 1986 section 1433(b)(2)(A) leads to a conclusion contrary to that expressed in the Court's opinion.  The conclusion in the Court's opinion is

---

[1] Following a prior judicial decision rejecting respondent's interpretation of TRA 1986 sec. 1433(b)(2)(A) as inconsistent with the plain reading of that section, respondent caused his interpretation to be prescribed in sec. 26.2601-1(b)(1)(i), GST Tax Regs.  The Court's opinion supra p. 21 frames this case as "a question of first impression concerning the validity of section 26.2601-1(b)(1)(i), GST Tax Regs."  I view this case differently. In a case such as this, where the question involves an "interpretation of the plain language" of a statute, respondent's interpretation of that language is not entitled to any greater respect simply because respondent has bootstrapped his interpretation by causing it to be prescribed in a regulation. The judiciary, and not respondent (or the Secretary), is the final authority on the plain meaning of a statute.  See Rubin v. United States, 449 U.S. 424, 430 (1981); Volkswagenwerk v. FMC, 390 U.S. 261, 272 (1968); FTC v. Colgate-Palmolive Co., 380 U.S. 374, 385 (1965).  While Natl. Cable & Telecomm. Association v. Brand X Internet Servs., 545 U.S. 967 (2005), allows an agency in certain cases to overrule an adverse judicial interpretation through the issuance of regulations, that case is inapplicable where, as here, the judicial interpretation follows from the unambiguous terms of the statute.

predicated on its finding that respondent's interpretation is "a reasonable * * * interpretation of the plain language" of TRA 1986 section 1433(b)(2)(A), as opposed to a finding, which the Court's opinion does not make, that respondent's interpretation represents <u>the</u> plain reading of TRA 1986 section 1433(b)(2)(A). To my mind, an unambiguous statute has only a single plain reading, see <u>Chickasaw Nation v. United States</u>, 534 U.S. 84, 94 (2001), and any other reading is ultra vires even if it is "reasonable".[2]  Such is especially so where, as here, respondent's

_____

[2] I disagree with the Court's opinion's conclusion <u>supra</u> pp. 24-25 that "Congress has [not] directly spoken to the precise question at issue" "Inasmuch as TRA 1986 section 1433(b)(2)(A) does not define the phrase 'transfer under a trust'".  Congress has spoken directly on this issue in the best way that it can; i.e., by providing in unambiguous terms that the generation-skipping tax (GST) "<u>shall not apply to</u> * * * <u>any</u> generation-skipping transfer under a trust which was irrevocable on September 25, 1985".  TRA 1986 sec. 1433(b)(2)(A) (emphasis added); see <u>HUD v. Rucker</u>, 535 U.S. 125, 131 (2002) ("As we have explained, 'the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind'" (quoting <u>United States v. Gonzales</u>, 520 U.S. 1, 5 (1997))); <u>United States v. Am. Trucking Associations, Inc.</u>, 310 U.S. 534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."); see also <u>United States v. Monsanto</u>, 491 U.S. 600, 606-609 (1989); <u>D.J. Lee, M.D., Inc. v. Commissioner</u>, 931 F.2d 418, 420 (6th Cir. 1991), affg. 92 T.C. 291 (1989); <u>Cornett-Lewis Coal Co. v. Commissioner</u>, 141 F.2d 1000, 1004 (6th Cir. 1944), revg. and remanding 47 B.T.A. 571 (1942).  I know no rule of law, nor has the Court's opinion referenced any such rule, that states that a term is ambiguous simply because it is not defined by Congress.  The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  * * *  When the statutory language is plain, the sole function of the courts--at least where the
(continued...)

interpretation was previously rejected by a judicial tribunal in favor of the plain reading application of that section.

TRA 1986 section 1433(b)(2)(A) provides in relevant part that the GST does not apply to "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985".[3]  As noted in the Court's opinion supra pp. 7 and 17-18, the Secretary proposed section 26.2601-1(b)(1)(i), GST Tax Regs., in 1999, 13 years after the enactment of TRA 1986 section 1433(b)(2)(A), to supplant the literal interpretation that the Secretary had given TRA 1986 section 1433(b)(2)(A) in a predecessor regulation and, more particularly, to overrule the judiciary's rejection in Simpson v. United States, supra, of respondent's more restrictive interpretation of TRA 1986 section 1433(b)(2)(A).  As finalized,

---

[2](...continued)
disposition required by the text is not absurd--is to enforce it according to its terms."  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. ___, 126 S.Ct. 2455, 2459 (2006) (citations and internal quotation marks omitted).

[3] As I read TRA 1986 sec. 1433(b)(2)(A), Congress included within that section both a general rule and an exception thereto. The general rule provides that the GST does not apply to "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985".  The exception provides that the general rule applies "only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985".

section 26.2601-1(b)(1)(i), GST Tax Regs., states in relevant

part:

> The provisions of chapter 13 do not apply to any
> generation-skipping transfer under a trust (as defined
> in section 2652(b)) that was irrevocable on September
> 25, 1985.  * * *  Further, the rule in the first
> sentence of this paragraph (b)(1)(i) does not apply to
> a transfer of property pursuant to the exercise,
> release, or lapse of a general power of appointment
> that is treated as a taxable transfer under chapter 11
> or chapter 12.  The transfer is made by the person
> holding the power at the time the exercise, release, or
> lapse of the power becomes effective, and is not
> considered a transfer under a trust that was
> irrevocable on September 25, 1985.    * * *

Petitioner's appeal of the Court's opinion's acceptance of

respondent's nonliteral interpretation of TRA 1986 section

1433(b)(2)(A) will most certainly be to the Court of Appeals for

the Sixth Circuit.  That court has advised lower courts that

"Where the statute is clear, the agency has nothing to interpret

and the court has no agency interpretation to which it may be

required to defer."  Dixie Fuel Co. v. Commr. of Soc. Sec.,

171 F.3d 1052, 1064 (6th Cir. 1999), abrogated on other grounds

by Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003); accord

Bradley v. Austin, 841 F.2d 1288, 1293 (6th Cir. 1988) ("In

determining the meaning of legislation, we must first look to the

plain language of the statute itself.  * * *  If we find that the

statutory language is unambiguous, then that language is regarded

as conclusive unless there is a clearly expressed legislative

intent to the contrary"); Ohio Power Co. v. NLRB, 176 F.2d 385,

387 (6th Cir. 1949) (holding that plain and unambiguous text must be applied as written without resort to construction); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). The Courts of Appeals for the Eighth and Ninth Circuits have held in Simpson v. United States, 183 F.3d 812 (8th Cir. 1999), and Bachler v. United States, 281 F.3d 1078 (2002), that the general rule in TRA 1986 section 1433(b)(2)(A) may be applied plainly as written, and the Court's opinion sets forth no persuasive reason as to why the Court of Appeals for the Sixth Circuit, or any other Court of Appeals for that matter, should (or will) disagree with the holdings of those cases.[4]

The Court's opinion strains to find an ambiguity in the clear reading of TRA 1986 section 1433(b)(2)(A) by referencing

---

[4] The Court's opinion suggests supra p. 25 that the Courts of Appeals for the Eighth and Ninth Circuits did not consider the general rule in its "particular context". I disagree. Those courts applied the general rule according to the plain reading of its terms and, consistent with settled law, see, e.g., Bower v. Fed. Express Corp., 96 F.3d 200, 208 (6th Cir. 1996) (holding that an ambiguity in one part of a statute is not cause to narrow or expand the plain meaning of a term found elsewhere in the statute), declined respondent's invitation to narrow the plain reading of those terms on account of a proffered ambiguity in the terms of the statute. When a clear term may be construed plainly as written, a court should not strain to find ambiguity in that term so as apply it differently. See Sphinx Intl., Inc. v. Natl. Union Fire Ins. Co., 412 F.3d 1224, 1228 (11th Cir. 2005).

Peterson Marital Trust v. Commissioner, 102 T.C. 790 (1994),
affd. 78 F.3d 795 (2d Cir. 1996). That case is both factually
and legally distinguishable from Simpson v. United States, supra,
and Bachler v. United States, supra. First, as a matter of law,
Peterson Marital Trust did not deal with the part of the statute
at issue in Simpson and Bachler (as well as at issue here). The
case of Peterson Marital Trust concerned the part of TRA 1986
section 1433(b)(2)(A) that follows the comma; i.e., the exception
that provides "only to the extent that such transfer is not made
out of corpus added to the trust after September 25, 1985". The
Courts of Appeals for the Eighth and Ninth Circuits construed the
part of TRA 1986 section 1433(b)(2)(A) preceding the comma; i.e.,
the general rule that provides "any generation-skipping transfer
under a trust which was irrevocable on September 25, 1985". The
Courts of Appeals for the Eighth and Ninth Circuits held
specifically that the exercise of a general testamentary power of
appointment by a beneficiary of a decedent's trust is within the
"clear" or "straightforward" plain reading of the general rule
because the exercise is a transfer under a trust which was
irrevocable on September 25, 1985. Bachler v. United States,
supra at 1079, 1080 (the court reached its decision by applying a
"straightforward reading" of the general rule); Simpson v. United
States, supra at 813, 814, 816 (the court held that the reading
of the general rule is "clear"); accord Bartlik v. U.S. Dept. of

Labor, 62 F.3d 163, 165-166 (6th Cir. 1995) (courts must endeavor to apply the plain meaning of a statute as ascertained through a "straightforward" and "commonsense" approach).  The Courts of Appeals for the Eighth and Ninth Circuits rejected respondent's reading of the general rule to require that the transfer be irrevocable on September 25, 1986, a reading also espoused by respondent here and accepted by the Court's opinion supra pp. 21 and 27-29, concluding instead that the general rule in TRA 1986 section 1433(b)(2)(A) plainly required that the trust be irrevocable on that date.  See Bachler v. United States, supra at 1080; Simpson v. United States, supra at 814.  That conclusion is supported by the "rule of the last antecedent", under which the clause "which was irrevocable on September 25, 1985" should be construed to relate to the word "trust" and not to the word "transfer".  See 2A Singer, Sutherland Statutory Construction, sec. 47:33 (6th ed. 2000); see also Barnhart v. Thomas, 540 U.S. 20, 26 (2003).  That conclusion also is supported by the fact that Congress apparently drafted the general rule with a broad and precise brush, providing explicitly that the GST "shall not apply to * * * any generation-skipping transfer under a trust which was irrevocable on September 25, 1985."  (Emphasis added.) Accord Dixie Fuel Co. v. Commr. of Soc. Sec., supra at 1061 (noting that the "Supreme Court has held in any number of contexts that 'shall' is 'explicitly mandatory' language").

The cases of <u>Simpson v. United States</u>, <u>supra</u>, and <u>Bachler v. United States</u>, <u>supra</u>, also are factually distinguishable from the case of <u>Peterson Marital Trust v. Commissioner</u>, <u>supra</u>. The cases of <u>Simpson</u> and <u>Bachler</u>, like the present case, involved the exercise of a power of appointment and the question of whether the exercise was a transfer under a trust; the case of <u>Peterson Marital Trust</u> involved the lapse of a power of appointment and the question of whether the lapse added corpus to the trust. As the Courts of Appeals noted in <u>Simpson v. United States</u>, <u>supra</u> at 815-816, and <u>Bachler v. United States</u>, <u>supra</u> at 1080, this critical point sufficiently distinguished those two cases from <u>Peterson Marital Trust</u> and the holding thereof. See also <u>Simpson v. United States</u>, <u>supra</u> at 815 ("The distinction between <u>Peterson</u> and the present case is obvious."). The courts also noted that the lapse in <u>Peterson Marital Trust</u> was governed by a temporary regulation that stated what constituted "corpus added to the trust" and that the exercise of the power of appointment was outside of that regulation in that the exercise depleted, rather than added, to the trust's corpus. See <u>Bachler v. United States</u>, <u>supra</u> at 1080; <u>Simpson v. United States</u>, <u>supra</u> at 815-816.

In closing, I believe that the Court in this case should apply the plain and unambiguous reading of the general rule, consistent with the reading of the Courts of Appeals for the

Eighth and Ninth Circuits.  Because the Court's opinion does not do so, I dissent.

COLVIN, VASQUEZ, GALE, and WHERRY, <u>JJ.</u>, agree with this dissenting opinion.

VASQUEZ, J., dissenting:  I write separately to address the issue of the proper deference the Court should give to interpretive regulations.[1]  I respectfully disagree with the position that when the Court reviews interpretive regulations we should continue to follow the analysis set forth in Natl. Muffler Dealers Association v. United States, 440 U.S. 472 (1979).  See Court op. pp. 22-23.  I believe that in United States v. Mead Corp., 533 U.S. 218 (2001), the Supreme Court of the United States set forth the analysis that courts should use to decide the deference courts should give to interpretive regulations.

I.   Chevron Deference

"If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984).  Accordingly, an agency interpretation (e.g., a Treasury regulation) cannot conflict with the unambiguously expressed intent of Congress.

If a statute is ambiguous, Chevron provides that a reviewing court is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable.  United States v. Mead Corp., supra at 227, 229.  Thus, any regulation entitled to Chevron deference

---

[1]  Deference only sets the framework for judicial analysis; it does not displace it.  United States v. Vogel Fertilizer Co., 455 U.S. 16, 24 (1982); United States v. Cartwright, 411 U.S. 546, 550 (1973).

is binding on the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.  Id. at 227.

II.  Mead

It is "plain error for [courts] to rely on" Chevron in determining what deference to give agency actions without considering Mead.  Am. Fedn. of Govt. Employees, AFL-CIO v. Veneman, 284 F.3d 125, 129 (D.C. Cir. 2002).

In Mead, the Supreme Court clarified the limits of Chevron deference owed to an agency's interpretation of a statute it administers.  The Supreme Court held that an agency's interpretation of a particular statutory provision qualifies for Chevron deference when (1) Congress delegated authority to the agency to make rules or regulations carrying the force of law, and (2) the agency interpretation claiming deference was promulgated in the exercise of that authority.  United States v. Mead Corp., supra at 226-227, 237; Pool Co. v. Cooper, 274 F.3d 173, 177 n.3 (5th Cir. 2001).  Furthermore, "mere ambiguity in a statute is not evidence of congressional delegation of authority", agency authority is not to be lightly presumed, and courts should not presume a delegation of power based solely on the fact that there was not an express withholding of such power. Michigan v. EPA, 268 F.3d 1075, 1082 & n.2 (D.C. Cir. 2001).

When an agency's interpretation of a particular statutory provision does not qualify for Chevron deference, it is entitled

to the deference accorded under Skidmore v. Swift & Co., 323 U.S. 134 (1944). United States v. Mead Corp., supra at 234-235, 237. Pursuant to Skidmore, the agency's interpretation is accorded respect proportional to its "power to persuade". Id. at 235; Pool Co. v. Cooper, supra at 177 (in the absence of Chevron deference, pursuant to Mead the agency's interpretation is accorded respect under Skidmore according to its "power to persuade"); Landmark Legal Found. v. IRS, 267 F.3d 1132, 1135-1136 (D.C. Cir. 2001) (when Chevron deference does not apply, the Internal Revenue Service's interpretations are entitled to "no more than the weight derived from their 'power to persuade.'").

III. Interpretive Versus Legislative Regulations

Treasury regulations are either legislative or interpretive in character. Tutor-Saliba Corp. v. Commissioner, 115 T.C. 1, 7 (2000). Interpretive regulations are promulgated under section 7805; legislative regulations, however, are issued pursuant to a specific Congressional delegation of authority, to the Secretary of the Treasury or the Commissioner, to issue rules or regulations that have the force and effect of law. Id.; Hefti v. Commissioner, 97 T.C. 180, 189 (1991), affd. 983 F.2d 868 (8th Cir. 1993). "An interpretive regulation may be contrasted to a legislative regulation, one which is mandated specifically in the statute and has the force and effect of law." Matheson v. Commissioner, 74 T.C. 836, 840 n.7 (1980).

The Internal Revenue Code contains numerous specific delegations of authority from Congress to the Secretary or the Commissioner to issue rules or regulations that have the force and effect of law.  See, e.g., sec. 1502.  These sections--that provide for issuing legislative regulations--would be superfluous if section 7805 were a delegation of authority from Congress to make rules or regulations carrying the force of law.  It is a fundamental rule of statutory construction to give effect to all of the language of the statute.  See Hellmich v. Hellman, 276 U.S. 233 (1928); Stanford v. Commissioner, 297 F.2d 298, 308 (9th Cir. 1961), affg. 34 T.C. 1150 (1960); Larkin v. United States, 78 F.2d 951 (8th Cir. 1935); Stolk v. Commissioner, 40 T.C. 345 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964).  It is a well-accepted rule of statutory construction that the various sections of the Code should be construed so that one section will explain and support and not defeat or destroy another section. Crane v. Commissioner, 331 U.S. 1, 13 (1947); Bernier v. Bernier, 147 U.S. 242, 246 (1893); Pleasanton Gravel Co. v. Commissioner, 85 T.C. 839, 851 (1985).  Accordingly, I believe that section 7805 is not a delegation of authority by Congress to make rules or regulations carrying the force of law.

IV.  Mead Applied to Interpretive Regulations

Prior to Mead, we questioned whether Chevron applies to interpretive regulations.  Cent. Pa. Sav. Association & Subs. v. Commissioner, 104 T.C. 384, 391 (1995) (citing E.I. duPont de

Nemours & Co. v. Commissioner, 41 F.3d 130 (3d Cir. 1994), affg. 102 T.C. 1 (1994)).  The Supreme Court, also prior to issuing Mead, held that interpretive regulations are owed "less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision".  Rowan Cos. v. United States, 452 U.S. 247, 253 (1981); see United States v. Vogel Fertilizer Co., 455 U.S. 16, 24 (1982) (quoting Rowan Cos.); see also Cent. Pa. Sav. Association v. Commissioner, supra at 391 (citing Vogel Fertilizer Co.).  Accordingly, what level of deference the Court should give to interpretive regulations needs to be reexamined in light of Mead.

The first question in the Mead analysis is whether Congress delegated authority to the agency to make rules or regulations carrying the force and effect of law.  United States v. Mead Corp., 533 U.S. at 226-227; Pool Co. v. Cooper, supra at 177 n.3.  The second question is whether the agency invoked that authority.  United States v. Mead Corp., supra; Pool Co. v. Cooper, supra.

By promulgating a regulation pursuant to section 7805, the regulation was not issued pursuant to a delegation of authority by Congress to make rules or regulations carrying the force and effect of law.  See Tutor-Saliba Corp. v. Commissioner, supra at 7; Matheson v. Commissioner, supra at 840 n.7.  Accordingly, pursuant to Mead, interpretive regulations are not entitled to Chevron deference; instead, they are entitled to Skidmore

deference. United States v. Mead Corp., supra at 234-235; Rowan Cos. v. United States, supra at 253; United States v. Vogel Fertilizer Co., supra at 24; Pool Co. v. Cooper, supra at 177; Cent. Pa. Sav. Association v. Commissioner, supra at 391; Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp. 2d 608, 621 (E.D. Tex. 2006) (discussing the differences between legislative and interpretive regulations, concluding that different standards of review apply to each and that courts must accord a higher degree of deference to a legislative regulation than to an interpretive regulation, and holding that "Chevron deference is only available to the Regulation if it is a legislative regulation."); see also Boeing Co. v. United States, 537 U.S. 437, 448 (2003) (noting that an interpretive regulation promulgated under section 7805 "rather than pursuant to a specific grant of authority" is entitled to some measure of deference; however, the Court did not hold or suggest that interpretive regulations should receive Chevron deference).

## V.   Conclusion

I believe that Mead changed the landscape regarding the deference courts should give to interpretive regulations. Pursuant to the analysis set forth by the Supreme Court in Mead, I believe interpretive regulations are entitled to Skidmore deference.

Accordingly, I dissent.