TYMKOVICH, J.,
concurring.
I join the majority opinion except for Parts IV D and E, and concur in the judgment. I write separately because I believe the majority overstates the application of “intrastate economic protectionism” as a legitimate state interest furthered by Oklahoma’s funeral licensing scheme.
The majority opinion usefully sets forth an overview of the rational basis test. Under the traditional test, judicial review is limited to determining whether the challenged state classification is rationally related to a legitimate state interest. As the majority explains, and I agree, courts should not (1) second-guess the “wisdom, fairness, or logic” of legislative choices; (2) insist on “razor-sharp” legislative classifications; or (3) inquire into legislative motivations. I also agree that the burden rests with the challenger to a legislative classification “to negative every conceivable basis” supporting the law. Courts should credit “every plausible legitimate state interest” as a part of their judicial review under this deferential standard.
Where I part company with the majority is its unconstrained view of economic protectionism as a “legitimate state interest.” The majority is correct that courts have upheld regulatory schemes that favor some economic interests over others. Many state classifications subsidize or promote particular industries or discrete economic actors. And it is significant here that Oklahoma’s licensing scheme only covered intrastate sales of caskets. But all of the cases rest on a fundamental foundation: the discriminatory legislation arguably advances either the general welfare or a public interest.
The Supreme Court has consistently grounded the “legitimacy” of state interests in terms of a public interest. The Court has searched, and rooted out, even in the rational basis context, “invidious” state interests in evaluating legislative classifications. Thus, for example, in the paradigmatic case of Williamson v. Lee Optical, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), the Supreme Court invoked consumer safety and health in *1226 terests over a claim of pure economic parochialism. Rather than hold that a government may always favor one economic actor over another, the Court, if anything, insisted that the legislation advance some public good. Id. at 487-88, 75 S.Ct. 461 (“It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.... The prohibition of the Equal Protection Clause goes no further than [] invidious discrimination.”). Similarly, the Court in Fitzgerald v. Racing Ass’n of Central Iowa, 539 U.S. 103, 123 S.Ct. 2156, 156 L.Ed.2d 97 (2003) invoked economic development and protecting the reliance interests of river-boat owners, in City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) invoked historical preservation and economic prosperity, and in Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) invoked neighborhood preservation, continuity, stability, and protecting the reliance interests of property owners. None of these cases overturned the principle that., the Equal Protection Clause prohibits invidious state interests; to the contrary, they ratified the principle.
While relying on these time-tested authorities, the majority goes well beyond them to confer legitimacy to a broad concept not argued by the Board — unvarnished economic protectionism. Contrary to the majority, however, whenever courts have upheld legislation that might otherwise appear protectionist, as shown above, courts have always found that they could also rationally advance a non-protectionist public good. The majority, in contrast to these precedents, effectively imports a standard that could even credit legislative classifications that advance no general state interest.
The end result of the majority’s reasoning is an almost per se rule upholding intrastate protectionist legislation. I, for one, can imagine a different set of facts where the legislative classification is so lopsided in favor of personal interests at the expense of the public good, or so far removed from plausibly advancing a public interest that a rationale of “protectionism” would fail. Even those cases such as Fitzgerald that give some weight to economic protectionism, are careful to find a mix of state interests that advance the general welfare. No ease holds that the bare preference of one economic actor while furthering no greater public interest advances a “legitimate state interest.” [1]
We need not go so far in this case for two reasons. First of all, the record below and the district court’s findings of fact support a conclusion that the funeral licensing scheme here furthers, however imperfectly, an element of consumer protection. The district court found that the Board had in fact brought enforcement actions under the Act to combat consumer abuse by funeral directors. The licensing scheme thus provides a legal club to attack sharp practices by a major segment of casket retailers. Secondly, the history of the licensing scheme here shows that it predates the FCC’s deregulation of third- *1227 party casket sales or internet competition, and, at least in the first instance, was not enacted solely to protect funeral directors facing increased intrastate competition. I would therefore conclude that the district court did not err in crediting the consumer protection rationale advanced by the Board.
The licensing scheme at issue here leaves much to be desired. The record makes it clear that limitations on the free market of casket sales have outlived whatever usefulness they may have had. Consumer interests appear to be harmed rather than protected by the limitation of choice and price encouraged by the licensing restrictions on intrastate casket sales. Oklahoma’s general consumer protection laws appear to be a more than adequate vehicle to allow consumer redress of abusive marketing practices. But the majority is surely right that the battle over this issue must be fought in the Oklahoma legislature, the ultimate arbiter of state regulatory policy.
I therefore conclude that the legislative scheme here meets the rational basis test and join in the judgment of the majority.

. Three cases suggest that bare economic protectionism does not meet the legitimacy requirement: Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931) (holding that a bonding requirement favoring agricultural interests over other industries is not legitimate); Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (holding that a desire to improve the local economy by fostering instate insurance companies at the expense of out-of-state companies is not legitimate); Allegheny Pittsburgh Coal Co. v. County Comm’n, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (holding that a county tax assessment system discriminating against recent sales and protecting certain property owners is "wholly irrational”).