RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0448p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ESTATE OF ELEANOR R. GERSON, Deceased, Allan
D. Kleinman, Executor,

　　　　　　　　　　*Petitioner-Appellant,*

　　　　　*v.*

COMMISSIONER OF INTERNAL REVENUE,

　　　　　　　　　　*Respondent-Appellee.*

No. 06-2582

On Appeal from the Decision
of the United States Tax Court.
No. 13534-04—Harry A. Haines, Tax Court Judge.

Argued: September 17, 2007

Decided and Filed: November 9, 2007

Before: COLE and COOK, Circuit Judges; and FROST, District Judge.[*]

---

## COUNSEL

**ARGUED:** Mark A. Phillips, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, for Appellant. Michelle B. Smalling, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Mark A. Phillips, Jeffry L. Weiler, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, Mark D. Tucker, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellant. Michelle B. Smalling, Richard Farber, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Matthew Yackshaw, DAY, KETTERER, RALEY, WRIGHT & RYBOLT, Canton, Ohio, for Amicus Curiae.

---

## OPINION

---

　　　　COOK, Circuit Judge. The Estate of Eleanor R. Gerson appeals the United States Tax Court's decision to assess a tax of $1,144,465 on the proceeds of an irrevocable trust under the generation-skipping transfer ("GST") tax. The Estate asserts that a grandfather clause protects these assets from taxation, despite a treasury regulation that would lead to a contrary result. Because the Commissioner's regulation reasonably construes an ambiguous statutory provision, we affirm the Tax Court's decision.

---

[*]The Honorable Gregory L. Frost, United States District Judge for the Southern District of Ohio, sitting by designation.

I

Benjamin Gerson created a revocable trust to benefit his wife, Eleanor Gerson, and made his last changes to the instrument in 1973. By its terms the trust became irrevocable when Benjamin died three days later. The trust gave Eleanor the right to use the income during her life and to appoint a beneficiary to receive the corpus when she died. If Eleanor failed to use her appointment power, the corpus would flow into another trust for the benefit of Benjamin's children.

Eleanor died in 2000 with a will exercising the power of appointment and leaving the trust corpus to her grandchildren. After Eleanor's executor filed a tax return for the Estate, the Commissioner of Internal Revenue responded with a notice of deficiency claiming that the transfer triggered the GST tax.

The Gerson Estate brought an action in the Tax Court to challenge the deficiency. The Tax Court ultimately agreed that the Estate owed $1,144,465, prompting this appeal.

II

We review de novo the Tax Court's application of the Internal Revenue Code to undisputed facts. *See Limited, Inc. v. Comm'r*, 286 F.3d 324, 331 (6th Cir. 2002).

The GST tax applies to transfers that skip a generation, such as a transfer from grandparent to grandchild. *See* I.R.C. § 2613(a) (defining a "skip person" as "a natural person assigned to a generation which is 2 or more generations below the generation assignment of the transferor"). The GST "tax laws were enacted to ensure taxation of generation skipping transfers in a comparable manner to outright transfers from one generation to the next, and to remove the estate planning tool of escaping taxation by skipping a generation in an estate transfer." *Comerica Bank, N.A. v. United States*, 93 F.3d 225, 228 (6th Cir. 1996).

The Estate concedes that the GST tax would ordinarily apply, but cites an effective date provision that grandfathers certain unmodified irrevocable trusts created before 1985. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 1433(b)(2)(A), 100 Stat. 2717, 2731. This provision states that the tax does not apply to "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985." *Id.* Because Eleanor never added any assets to the corpus, the Estate asserts that the provision disposes of this case.

But the Commissioner disagrees, reasoning that testators must cast the die before 1985 by including the skip transfer in the trust instrument itself or conferring no more than a limited power of appointment.[1] The IRS embodied this view in a regulation, which the Estate challenges as contrary to the plain language of the effective date provision. Treasury Regulation § 26.2601-1(b)(1)(i) provides that the grandfather exception "does not apply to a transfer of property pursuant to the exercise, release, or lapse of a general power of appointment that is treated as a taxable transfer under chapter 11 or chapter 12."

This interpretive regulation was promulgated after notice and comment pursuant to the Treasury Department's general authority to issue regulations under I.R.C. § 7805(a), rather than under a specific statutory grant. The Tax Court highlighted three competing standards of review

---

[1]The Code defines a general power of appointment as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." I.R.C. § 2041(b)(1). The Code excludes from this definition "[a] power to consume, invade, or appropriate property" if the power "is limited by an ascertainable standard," *id.* § 2041(b)(1)(A), as well as some instances of shared power, *id.* § 2041(b)(1)(B)–(C).

applicable to such interpretive regulations, *Estate of Gerson v. Comm'r*, 127 T.C. 139, 154 (2006) (in the majority, applying *National Muffler* and *Chevron* standards in the belief the result would be the same under either approach), but this court has faithfully applied *Chevron* deference since abandoning the less deferential *National Muffler* standard in *Peoples Federal Savings & Loan Ass'n of Sidney v. Commissioner*, 948 F.2d 289, 304–05 (6th Cir. 1991). *See, e.g.*, *Littriello v. United States*, 484 F.3d 372, 376–78 (6th Cir. 2007) (applying *Chevron* deference to interpretive tax regulations); *Hosp. Corp. of Am. v. Comm'r*, 348 F.3d 136, 140–41 (6th Cir. 2003) (same).

Judge Vasquez's dissenting opinion in the Tax Court favored neither *National Muffler* nor *Chevron*, but *Skidmore* deference—which examines various factors, including the regulation's "power to persuade"—because the judge believed *United States v. Mead Corp.*, 533 U.S. 218 (2001), changed the law. *Gerson*, 127 T.C. at 174–75 (Vasquez, J., dissenting); *see generally Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). In *Mead*, the Supreme Court explained that agency interpretations flowing from the agency's general authority merit *Chevron* deference if "Congress delegated authority to the agency generally to make rules carrying the force of law" and "the agency interpretation claiming deference was promulgated in the exercise of that authority." 533 U.S. at 226–27. The Court ultimately applied the more searching *Skidmore* deference to the tariff ruling letters at issue, in large part because they were not "the fruits of notice-and-comment rulemaking or formal adjudication." *Id.* at 230–31; *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (interpretation contained in opinion letter not entitled to *Chevron* deference).

Although the IRS clearly has the authority to issue statements carrying the force of law, the issue is whether the agency intended to exercise that authority with Treasury Regulation § 26.2601-1(b)(1)(i). For one thing, the IRS regularly engages in notice and comment procedures for its general-authority regulations; these procedures foster "fairness and deliberation." *Mead*, 533 U.S. at 230. For another, the Tax Code penalizes violations of "the provisions of the Internal Revenue Code, temporary or *final Treasury regulations* issued under the Code, and revenue rulings or notices," showing the intent to bind the public to general-authority regulations. Treas. Reg. § 1.6662-3(b)(2) (emphasis added); *see also Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2350–51 (2007) (interpretive regulation that "governs the conduct of members of the public" entitled to *Chevron* deference where the agency used notice-and-comment procedures). Thus, we disagree that *Mead* mandates a less deferential standard than *Chevron* in this case.

Applying this Circuit's favored *Chevron* formulation, we first determine "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 273 (6th Cir. 1994). When it has, we apply the plain language of the statute. *Chevron*, 467 U.S. at 842–43. If faced with ambiguity or silence, we must instead decide whether the agency offers a "permissible construction of the statute." *Id.* at 843.

The first prong of *Chevron* rests on the premise that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n.9. In construing statutes, our primary goal is to effectuate legislative intent using traditional tools of statutory interpretation. *Fieran v. INS*, 268 F.3d 340, 344 (6th Cir. 2001). Nevertheless, "statutory language is to be read in pertinent context rather than in isolation." *Oates v. Oates*, 866 F.2d 203, 206 (6th Cir. 1989).

The effective date provision excludes "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985." Tax Reform Act of 1986 § 1433(b)(2)(A). It is undisputed that the Gerson trust was irrevocable before September 25, 1985.

The Code defines "generation-skipping transfer" to include "(1) a taxable distribution, (2) a taxable termination, and (3) a direct skip." I.R.C. § 2611(a). In this case the facts evidence a direct skip, "a transfer subject to a tax imposed by chapter 11 or 12 of an interest in property to a skip person." *Id.* § 2612(c)(1). The Estate thus meets the criteria under the provision's first clause.

The next step in the analysis, then, is to decide whether the "transfer is not made out of corpus added to the trust after September 25, 1985." Tax Reform Act of 1986 § 1433(b)(2)(A).

The parties' dispute on this second clause brings to this court a question that divides three of our sister circuits and the Tax Court below. *Compare Bachler v. United States*, 281 F.3d 1078 (9th Cir. 2002), *and Simpson v. United States*, 183 F.3d 812 (8th Cir. 1999) (grandfathering transfer), *with E. Norman Peterson Marital Trust v. Comm'r*, 78 F.3d 795 (2d Cir. 1996) (finding grandfather clause inapplicable). *See also Gerson*, 127 T.C. at 152.

The first court confronted with this quandary emphasized the overall legislative purpose of the GST tax scheme, as well as contextual provisions, to uphold the tax. *See Peterson*, 78 F.3d at 796–97. In *Peterson*, the trust included a power of appointment, but would automatically give the corpus to the grandchildren if the widow did not use her power of appointment. *Id*. at 797. The widow exercised her appointment power only to pay certain taxes, allowing the balance to fall to her grandchildren. *Id*.

*Peterson* cited two instances in which the Tax Code treats a power of appointment the same as outright ownership. First, a decedent's taxable estate includes assets over which the decedent had a power of appointment on the date of death. I.R.C. § 2041(a)(2); *see also Estate of Kurz v. Comm'r*, 101 T.C. 44, 47–48 (1993) (discussing general power of appointment as part of estate). Second, the exercise, release, or lapse of an appointment power incurs gift tax liability. *See* I.R.C. § 2514(b), (e). Though for general purposes the holder of the appointment power may not have the right to use the property, the Tax Code treats the power of appointment as if it were full ownership. *See Peterson*, 78 F.3d at 800. Indeed, the holder could use the entire trust to pay her own creditors or taxes upon death.

The Peterson Estate contended that the effective date provision protects broad reliance, a contention the court rejected by analyzing the legislative purpose:

> The rule was not enacted to allow taxpayers who, in good faith and without intent to evade taxes, seek to continue benefitting from a tax advantage that Congress has eliminated. It was designed, instead, to protect those taxpayers who, on the basis of pre-existing rules, made arrangements from which they could not reasonably escape and which, in retrospect, had become singularly undesirable.

*Id.* at 801.

Unlike the Second Circuit, the Eighth and Ninth Circuits have construed the grandfather provision in favor of the taxpayer. In *Simpson*, an irrevocable trust gave the settlor's wife a power of appointment. 183 F.3d at 813. Like Eleanor, the widow exercised the power of appointment in her will to give the corpus to her grandchildren. *Id*. The IRS first argued that the transfer was not "under" the trust. *See id*. at 814. The Eighth Circuit found this argument "simply untenable." *Id*. The court reasoned that to hold for the IRS, it would have to conclude that "which" modified "transfer," rather than "trust," a grammatical feat it did not wish to undertake. *Id.* The court disagreed with the IRS's views on the purpose of the effective date provision, finding that the statute allowed the widow to give the corpus to anyone she wanted without adverse tax consequences. *Id*. at 814–15. In *Bachler*, the Ninth Circuit also applied the exemption, drawing heavily from *Simpson*.

*See* 281 F.3d 1078.  Both courts distinguished *Peterson* on the grounds that *Peterson* involved a lapse, rather than an exercise of a power of appointment.  *Id.* at 1080; *Simpson*, 183 F.3d at 815–16.[2]

We agree with the *Simpson* and *Bachler* courts that the effective date provision breeds "under" cases and "added" cases, but we disagree that exercise and lapse come to different ends. In the exercise of a power of appointment, two transfers occur.  In the first transfer, the appointment power holder becomes the owner of the trust assets for tax purposes.  *See* I.R.C. § 2041(a)(2) (including assets over which a decedent has a power of appointment in the decedent's taxable estate).  In the second transfer, the holder transfers the assets to a skip person.  If the second transfer occurs after the GST tax became effective, tax liability ensues.  By contrast, in the lapse of a power of appointment, three transfers occur.  The creation of the power of appointment again amounts to a first transfer, but because the holder of the power of appointment never uses the power, the assets flow back through the trust as a second transfer, reaching the skip person in the third transfer from the trust.  *See* 26 C.F.R. § 26.2601-1(b)(1)(v)(A) ("[T]he value of the entire portion of the trust subject to the power that was released, exercised, or lapsed is treated as if that portion had been withdrawn and immediately retransferred to the trust at the time of the release, exercise, or lapse."). If the lapse occurs after 1985, liability results because assets were added to the trust corpus after September 25, 1985, per the second clause of the effective date provision.  Tax Reform Act of 1986 § 1433(b)(2)(A).

This is an "under" case because Eleanor exercised her power of appointment.  The ambiguity of this term—a common word without further definition in the GST scheme—results from the conflict between the Estate's reading that "under" merely implies that the trust instrument is the root of the skip power and the Commissioner's reading that the transfer was not under a trust irrevocable before 1985, but under Eleanor's will.  We disagree with the Estate that the statute has a plain meaning, as both parties offer plausible, contrary interpretations.

III

Recognizing ambiguity, we turn to step two of the *Chevron* test: whether the Commissioner reasonably construed the statute.  467 U.S. at 845.  In doing so, we acknowledge that the Treasury Department, not this court, makes tax policy decisions.  *See Smith v. Babcock*, 19 F.3d 257, 266 (6th Cir. 1994) ("[W]e seriously doubt that *ad hoc* decisions resulting from federal litigation can rival the wisdom or the legitimacy of the choices made by [administrative] experts.").

Context convinces us the Commissioner made a reasonable choice.  As the *Peterson* court recognized, "For tax purposes, a general power of appointment has for many, many years been viewed as essentially identical to outright ownership of the property."  78 F.3d at 800.  Thus, the regulation conforms the grandfather clause to other elements of the tax scheme.  *See* I.R.C. § 2041(a)(2) (power of appointment included in estate); *id*. § 2514(b) (exercise or release of a general power of appointment incurs gift tax).  In addition, the other exceptions to the GST tax

---

[2]The Estate argues that *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), requires us to follow the Eighth Circuit's "plain language" determination.  *See id.* at 982 ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").  We disagree.  *Brand X* confirmed an agency's ability to change policies; it did not hold that prior court interpretations freeze out agency regulation.  *See id.* at 982–83 (noting that binding agencies to court rulings would "preclud[e] agencies from revising unwise judicial constructions of ambiguous statutes").  *Simpson*, *Bachler*, and *Peterson* came down while the agency was developing regulations.  *Simpson* never held that the statute was so clear that it foreclosed regulation.  *See* 183 F.3d at 816.  Offering the most compelling rationale, the Tax Court discounted *Brand X*'s application because it did not believe that "conflicting judicial constructions" invoked the rule.  *Gerson*, 127 T.C. at 153.  The full significance of *Brand X* remains unclear, *see Brand X*, 545 U.S. at 1018–19 (Scalia, J., dissenting), but we are surely not bound by the Eighth and Ninth Circuits.

surrounding the irrevocable trust provision all represent inescapable contingencies that justify grandfathering, while the Estate's proposed interpretation protects disproportionately broad reliance on prior tax laws. For example, other exceptions protect the decedent who may have an estate plan, but little time to change it after the new tax scheme, *see* Tax Reform Act of 1986 § 1433(b)(2)(B) (excluding a skip under a will "if the decedent dies before January 1, 1987"), or those incompetent to change their wills, *id*. § 1433(b)(2)(C)(ii).

The parties debate the breadth of reliance the legislature intended to protect, but the legislature gave no guidance other than its ambiguous words. The Commissioner could have embraced total reliance on a GST-tax-free scheme; instead, he limited it. *See generally Tataranowicz v. Sullivan*, 959 F.2d 268, 277 (D.C. Cir. 1992) ("[G]randfathering typically seeks to provide special relief for persons on whom the new regime might bear with unusual severity, because it specially disrupts their lives, usually because of decisions they are likely to have taken in reliance on the prior regime."). This is precisely the type of decision entrusted to agency discretion. We recognize that a superficial reading of the effective date provision has fouled several estate plans, but this confusion validates Treasury Regulation § 26.2601-1(b)(1)(i), which alerts estate planners to avoid skipping assets via general powers of appointment.

IV

Deferring to the Commissioner's reasonable interpretation of the grandfather provision, we affirm.