NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0642n.06

No. 10-1387

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CARL E. KNOCHELMANN, JR., | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES TAX COURT |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| COMMISSIONER OF INTERNAL | ) | |
| REVENUE, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

_____

Before: GRIFFIN and WHITE, Circuit Judges; WATSON, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** Carl E. Knochelmann appeals *pro se* the Tax Court's judgment in favor of the Commissioner of Internal Revenue ("the Commissioner") denying Knochelmann's petition to claim a dependency exemption for his minor child. We **AFFIRM**.

## BACKGROUND

The underlying facts are undisputed. In 1997, Carl E. Knochelmann and Mary E. Bjelland had a son, referred to here as EJK. Knochelmann and Bjelland were never married to each other and maintained separate residences. However, pursuant to a court-mandated parenting plan, they shared joint legal custody of EJK. The parenting plan contained the following custody arrangement:

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

> During the first week, Mr. Knochelmann had custody from 8 a.m. Wednesday until 5:30 p.m. Friday; during the second week, he had custody from 8 a.m. Thursday until 5:30 p.m. Monday. Ms. Bjelland had custody at all other times; i.e., during the first week from 5:30 p.m. Monday through 8 a.m. Wednesday and from 5:30 p.m. Friday of the first week through 8a.m. Thursday of the second week. Holidays, birthdays, and vacations were shared according to an alternative schedule.

*Bjelland v. Comm'r*, T.C. Memo. 2009-297 [hereinafter T.C. Op.], slip op. at 3 (2009). Under this arrangement, in any given biweekly period, EJK spent six nights and 163 hours with Knochelmann, and eight nights and 173 hours with Bjelland. Each parent was responsible for expenses incurred while EJK was in his or her custody.

Knochelmann and Bjelland filed separate federal income-tax returns for 2004, in which they both claimed EJK as a dependent and took various related deductions and credits. The Commissioner issued notices of deficiency to both parents, who in turn petitioned to challenge the Commissioner's determination. After consolidating the two cases, the Tax Court ruled that only Bjelland could claim EJK as a dependent for 2004. Knochelmann appealed.[1]

## DISCUSSION

Knochelmann argues that the Tax Court erred in holding that he could not claim EJK as a dependent in 2004 and violated his Fifth Amendment rights by failing to take into account the fact that he provided more than half of EJK's support for that year.

---

[1]As a protective measure, the Commissioner also appealed the Tax Court's decision that Bjelland is entitled to claim EJK as a dependent, in case Knochelmann were to succeed in this case. *See Bjelland v. Comm'r*, No. 10-1345 (6th Cir. Apr. 7, 2010). The Commissioner's appeal is being held in abeyance pending this ruling.

No. 10-1387
*Knochelmann v. Comm'r*

"We review de novo the Tax Court's application of the Internal Revenue Code to undisputed facts." *Estate of Gerson v. Comm'r*, 507 F.3d 435, 437 (6th Cir. 2007). A taxpayer with a dependent child may claim a personal tax exemption for that child. Internal Revenue Code ("I.R.C.") §§ 151(c), 152 (codified at 26 U.S.C. §§ 151(c), 152).[2] As a rule, the taxpayer must provide more than half of the child's support during the fiscal year to claim that child as a dependent. *Id.* §152(a). However, in the case of divorced parents, the "custodial parent," *i.e.*, the parent with the most physical custody, is deemed to have provided over half of the child's support during the taxable year and is entitled to claim the exemption. *Id.* § 152(e)(1).[3] The custodial parent is free to waive the exemption for the noncustodial parent's benefit. *Id.* § 152(e)(2). This rule applies equally to parents who never married each other. *King v. Comm'r*, 121 T.C. 245, 246, 251 (2003).

---

[2]Unless otherwise indicated, all references to the I.R.C. are to the version in effect in 2004.

[3]In relevant part, I.R.C. § 152(e) (2004) stated:
SEC. 152(e). Support Test in Case of Child of Divorced Parents, Etc. --
(1) Custodial parent gets exemption. * * * if --
    (A) a child * * * receives over half of his support during the calendar
    year from his parents --
        * * *
        (iii) who live apart at all times during the last 6
        months of the calendar year, and
    (B) such child is in the custody of one or both of his parents for more
    than one-half of the calendar year,
such child shall be treated . . . as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter * * * referred to as the "custodial parent").
T.C. Op. 4-5 (asterisks in original).

3

The Tax Court found that Bjelland was entitled to claim the exemption because "[she] had physical custody of EJK for the greater portion of 2004 measured either by the number of hours or the number of nights he spent with her." T.C. Op. 10. Knochelmann concedes that Bjelland spent more time with EJK overall, but points out that he had more daytime custody,[4] which is typically when EJK's expenses are the highest. Since each parent was responsible for EJK's expenses during his or her custody hours, Knochelmann argues that he bore the greater burden of paying for EJK's school-related expenses, including clothing, lunches and transportation. Instead of counting how many hours or nights EJK spent with either parent, Knochelmann argues that the Tax Court should have considered which parent had the most *daytime* custody of EJK.

"The starting point for interpretation of a statute is the language of the statute itself." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) (internal quotation marks and citation omitted); *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 743 (6th Cir. 2005). If the statutory language is unambiguous, "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) (internal quotation marks, citation and brackets omitted); *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 286 (6th Cir. 2010). If an ambiguity persists, however, courts "may look to the legislative history surrounding the adoption of the statute to aid" in its interpretation. *Broad. Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (6th Cir. 2005).

---

[4]Indeed, whereas EJK spent eight *nights* with Bjelland (compared to six with Knochelmann), he spent eight *days* with Knochelmann and only six with Bjelland.

The 2004 version of I.R.C. § 152(e)(1) unambiguously provided that a child of divorced parents would be "treated . . . as receiving over half of his support . . . from the parent having custody *for a greater portion of the calendar year*." T.C. Op. 4-5 (*quoting* I.R.C. § 152(e)(1)) (emphasis added); *see also* Treas. Reg. § 1.152-4(b) (2003) ("In the event of so-called 'split' custody, . . . 'custody' will be deemed to be with the parent who, as between both parents, has the physical custody of the child for the greater portion of the calendar year.") (*quoted in McCullar v. Comm'r*, T.C. Memo 2003-272 (2003)). Neither the statute nor then-applicable regulations explained how to measure the amount of time each parent had physical custody of EJK. Nevertheless, based on the number of hours EJK spent with each parent, it is undeniable that Bjelland had physical custody for "a greater portion of the calendar year." Therefore, in awarding the exemption to Bjelland, the Tax Court ruled consistently with the plain language of the statute.[5]

Knochelmann claims that under regulations effective in 2004, he was entitled to a presumption that he provided more than half of EJK's support. Indeed, then-applicable Treasury regulations provided that if a noncustodial parent established that he had contributed over $1,200 to support his child during the fiscal year, he was entitled to claim the exemption unless the custodial parent could show, by clear preponderance of the evidence, that she actually provided more for the child's support. *See* Treas. Reg. § 1.152-4(d)(3) (2004) (codified at 26 C.F.R. § 1.152-4(d)(3) (2004)); *Knight v. Comm'r*, T.C. Memo 1992-710 (1992), *aff'd*, 29 F.3d 632 (9th Cir.) (unpublished

---

[5]Knochelmann also argues that he should be entitled to the exemption because the custody order required him to provide more than half of EJK's support in 2004. However, I.R.C. § 152(e)(1) simply considers each parent's *physical* custody over the dependent child, not their respective financial contributions to that child's support.

table case), *cert. denied*, 513 U.S. 878 (1994). Knochelmann argues that he paid over $1,200 for his son in 2004 and that Bjelland bears the burden to prove that she contributed more than he did to support EJK. However, it appears that Treas. Reg. § 1.152-4(d)(3) was based on a version of I.R.C. § 152(e) that was no longer in effect in 2004. *See generally Knight*, T.C. Memo 1992-710; *see also McCaskill v. Comm'r*, 77 T.C. 689 (1981). Congress abandoned the older language when it passed the Deficit Reduction Act of 1984, P.L. 98-369, § 423, 98 Stat. 494, 799, which amended I.R.C. § 152(e). *See Knight*, T.C. Memo 1992-710, at n.2. It is axiomatic that when a regulation is clearly inconsistent with the statute on which it is based, the statutory language controls. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("[R]egulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." (footnote omitted)); *City of Cleveland v. Ohio*, 508 F.3d 827, 843 (6th Cir. 2007). Moreover, "[t]he Treasury's relaxed approach to amending its regulations to track Code changes is well documented."[6] *United Dominion Indus. v. United States*, 532 U.S. 822, 836 (2001) (citing sources). Therefore, Knochelmann's argument fails.

Finally, Knochelmann contends that, as applied by the Tax Court, I.R.C. § 152(e) violates the Fifth Amendment because it arbitrarily distinguishes between custodial and noncustodial parents

---

[6]In July 2008, the Department of the Treasury issued a revised version of Treas. Reg. § 1.152-4, which reflects and conforms to Congress's 1984 amendments to I.R.C. § 152(e). *See* T.D. 9408, 2008-33 I.R.B. 323 (2008). As amended, the regulation defines the custodial parent as "the parent with whom the child resides for the greater number of nights during the calendar year." Treas. Reg. § 1.152-4(d)(1) (2008).

as the basis for awarding the child-dependency exemption.[7] The equal-protection analysis remains the same whether a claim arises under the Fifth or Fourteenth Amendment. *Adarand Constructors v. Pena*, 515 U.S. 200, 234 (1995); *Schweiker v. Wilson*, 450 U.S. 221, 226 n.6 (1981). Equal-protection challenges to tax or economic statutes are subject to rational-basis review, unless the plaintiff alleges an unlawful taking, or that the law infringes upon fundamental rights or creates a "suspect" classification. *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 175 (1980); *see also Fitzgerald v. Racing Ass'n*, 539 U.S. 103, 107 (2003) (equal-protection challenge to a tax law that did not distinguish based on statehood or length of in-state residency subject to rational review); *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527 (1959) (when enacting tax laws, states "must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary."). As explained by the Supreme Court,

---

[7]Since Knochelmann does not allege that he was denied procedural due process, or that the Tax Court's ruling deprived him of a fundamental right or liberty interest, we construe his challenge as an equal-protection claim. However, Knochelmann's argument would also fail due-process review. The Supreme Court has long recognized that "[w]hether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934); *see also INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992). Moreover, the Court has made clear that,

> [e]xcept in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. . . . That clause is applicable to a taxing statute . . . only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property.

*A. Magnano Co. v. Hamilton*, 292 U.S. 40, 44 (1934) (footnote and citations omitted). In the instant case, Congress's decision to grant the child-dependency exemption to the custodial parent fulfilled a legitimate purpose and was not "so arbitrary" as to violate the Fifth Amendment.

> The appropriate standard of review [for an equal-protection challenge to a tax law] is whether the difference in treatment [at issue] rationally furthers a legitimate state interest. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. This standard is especially deferential in the context of classifications made by complex tax laws.

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (internal citations omitted); *see also Lawrence v. Texas*, 539 U.S. 558, 579-80 (2003) ("[E]conomic or tax legislation . . . scrutinized under rational basis review normally pass[es] constitutional muster, since 'the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.'" (*quoting Cleburne v. Cleburne Living Ctr.*, 440 473 U.S. 432, 440 (1985))).

When reviewed under an equal-protection prism, the question raised by Knochelmann becomes whether treating custodial and noncustodial parents differently for purposes of awarding the child-dependency exemption furthers a legitimate governmental interest. Knochelmann asserts that giving the exemption to the parent with the most physical custody violates the rights of parents who, despite having lesser custody rights, pay most of the child's expenses. He argues that I.R.C. § 152(e) should be construed to create a presumption in favor of the custodial parent, unless the noncustodial parent demonstrates that he actually provides more than half of the child's support.

In essence, Knochelmann argues for returning to the pre-1984 statutory framework, which allowed the parent with the most physical custody to claim the dependent-child exemption, unless the other parent could show that he provided more than $1,200 for the child's support. *See Knight*, T.C. Memo 1992-710 n.3 (*quoting* pre-1984 version of I.R.C. § 152(e)). Congress deliberately did

away with this system, however, when it passed the Deficit Reduction Act of 1984. The House

report pertaining to this legislation explained that the older framework was –

> often subjective and [presented] difficult problems of proof and substantiation. The Internal Revenue Service became involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. * * * The Committee [wished] to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

H.R. Rep. No. 98-432, pt. 1, at 197-98 (1983) (*quoted in Cafarelli v. Comm'r*, T.C. Memo 1994-265

(1994) (asterisks and brackets in *Cafarelli*)); *see also Knight*, T.C. Memo 1992-710.

The House report reflects that Congress's goal in amending I.R.C. § 152(e) was to relieve

the Internal Revenue Service of the obligation to mediate and adjudicate conflicts between divorced

or separated parents and to "provide more certainty" to the "often subjective and . . . difficult

problems of proof and substantiation" involved in resolving dependency-exemption disputes. *Harris*

*v. Comm'r*, T.C. Memo 2007-239 (2007); H.R. Rep. No. 98-432, pt. 1, at 197-98. While Congress's

decision may strike Knochelmann as arbitrary, it undeniably fulfills the legitimate purpose of

reducing the administrative burden on the Internal Revenue Service. *See Boumediene v. Bush*, 553

U.S. 723, 796 (2008) (observing that reducing the Government's administrative burden fulfills a

legitimate congressional purpose); *accord Harris*, T.C. Memo 2007-239; *Knight*, T.C. Memo 1992-

710; *Bryant v. Comm'r*, 72 T.C. 757, 766 (1979). Therefore, Knochelmann's equal-protection claim

fails.

## CONCLUSION

The decision of the Tax Court is **AFFIRMED**.